GEORGE YUSKO, Respondent, v. MIDDLEWEST FIRE INSUR-
ANCE COMPANY, OF VALLEY CITY, NORTH DAKOTA,
a Corporation, Appellant.

(166 N. W. 539.)

Fire insurance — contract of — standard form policy — commissioner of
insurance—other insurance—without consent of first insurer—.provi-
sions of policy as to—waiver of—retention of all premiums paid—
after knowledge of other insurance—without objection—defense of
double insurance—estopped to make.

1. Where a contract of fire insurance, being the standard form of fire insur-
ance contract on file with the Commissioner of Insurance of the state of North
Dakota, contains a provision to the effect that said policy, unless otherwise pro-
vided by agreement indorsed thereon or added thereto, should be void if the
insured should thereafter make or procure any other contract of insurance;
whether valid or not, on the property covered in whole or in part by defend-
ant's policy; and the insured after the issuing of defendant's policy did procure
other insurance without written consent in the manner above stated; and the
property upon which such double insurance was procured was struck by light-
ning, and fire ensued therefrom causing the total destruction of such property,
and after such loss the defendant acquired full knowledge of such additional
insurance, and notwithstanding such knowledge retained all the premiums for
the whole time for which such policy was issued, the policy being for a definite
time, and never returned, offered to return, or tendered to the insured at any

---

NOTE.—Where a policy of insurance provides the taking out of other insurance
without the written consent of the company indorsed upon the policy, knowledge
of other insurance not followed by dissent on the part of the company, it was held
to be a waiver of the forfeiture, as will be seen by an examination of the cases in
notes in 25 L.R.A.(N.S.) 1, and 51 L.R.A.(N.S.) 261.

On effect of breach of condition in insurance policy against other insurance, see
note in 4 Am. St. Rep. 123.

time or in its answer to the complaint of the plaintiff seeking to recover upon such policy contract, any of the unearned premiums; the defendant at all times maintaining its right to retain all such unearned premiums, and never having canceled, or demanded the cancelation of such policy in its said answer, or otherwise,—*held*, that defendant by its conduct and its retention of all such unearned premiums waived the provisions of forfeiture of such policy providing against additional insurance, and is estopped to deny its liability on such policy contract.

**Double insurance — loss under — adjusted and payable ratably — premiums paid — kept by company — with knowledge of other insurance — before loss — risk cannot be avoided — conditions of policy waived.**

2. Section 6548, Compiled Laws of 1913, is as follows: "In case of double insurance the several insurers are liable to pay losses thereon as follows: 1. In fire insurance each insurer must contribute ratably towards the loss without regard to the dates of the several policies." *Held*, that such provision in a fire insurance policy, to the effect that it will become void if the insured procures additional insurance without the written consent of the insurer indorsed on such policy, when construed in the light of this section, is not void but voidable only; and where such provision in such policy against additional insurance may be waived by written consent of the insurer indorsed on such policy, and the insured takes out additional insurance, which fact becomes known to the insurer, and the insurer keeps all the unearned premiums and takes no steps to cancel such policy, such policy contract does not become absolutely void thereby, but at the most becomes only voidable, and the insurer cannot, after loss has ensued, avoid its risk.

Opinion filed October 11, 1917. Rehearing denied February 8, 1918.

Appeal from the judgment of the District Court of Morton County, *J. M. Hanley*, J.

Affirmed.

*Barnett & Richardson* and *Nathan H. Chase*, for appellant.

A provision in a fire insurance policy to the effect that no other or additional insurance shall be taken out on the property insured by the insured, without the written permission of the first insurer, and that if such other insurance is placed upon the property without such written permission, the policy shall be void, is customary and reasonable and will be enforced. 2 Clement, Fire Ins. 83, and cases cited; Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799.

Upon receiving a policy of insurance, the assured is legally chargeable with notice and knowledge of the entire terms of the insurance con-

tract, and is estopped to deny such knowledge. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W 837; Hronish v. Home Ins. Co. 33 S. D. 428, 146 N. W. 588.

The mere attaching to an ordinary policy of fire insurance of a "percentage value clause" is not a written consent, or indorsement of consent, to other insurance. Palatine Ins. Co. v. Ewing, 34 C. C. A. 236, 92 Fed. 111; Dolan v. Missouri Town Mut. F. Ins. Co. 88 Mo. App. 666; Bush v. Missouri Town Mut. Ins. Co. 85 Mo. App. 155.

Attaching to an ordinary fire insurance policy, of the "lightning clause," is not a written indorsement of consent to other insurance, especially where it is placed thereon, subject to all the other provisions of the policy. Palatine Ins. Co. v. Ewing, 34 C. C. A. 236, 92 Fed. 111.

The defendant neither had knowledge of the subsequent additional insurance nor in any manner consented thereto. Calmenson v. Equitable Mut. F. Ins. Co. 92 Minn. 390, 100 N. W. 88, and cases cited; Frost's Detroit Lumber & W. W. Works v. Millers' & Mfrs. Mut. Ins. Co. 37 Minn. 300, 5 Am. St. Rep. 846, 34 N. W. 35; Allemania F. Ins. Co. v. Hurd, 37 Mich. 11, 26 Am. Rep. 491; Eagle F. Ins. Co. v. Globe Loan & T. Co. 44 Neb. 380, 62 N. W. 895; Home F. Ins. Co. v. Wood, 50 Neb. 381, 69 N. W. 941; Baumgartel v. Providence Washington Ins. Co. 136 N. Y. 547, 32 N. E. 990.

The plaintiff's cause of action here is based upon the insurance policy, and all prior or contemporaneous agreements are merged in such policy, and plaintiff is bound by its provisions. Union Nat. Bank v. German Ins. Co. 18 C. C. A. 203, 34 U. S. App. 397, 71 Fed. 473; Union Mut. L. Ins. Co. v. Mowry, 96 U. S. 544, 24 L. ed. 674; Germania Ins. Co. v. Bromwell, 62 Ark. 43, 34 S. W. 83.

*Jacobsen & Murray,* for respondent.

Forfeiture clauses for additional insurance against loss by lightning is invalid.

Such clauses, in the first instance, relate to losses by fire only. 19 Cyc. 764, note 20.

No matter how many policies against loss by fire, the insured could only recover for the value of the property covered and lost. The number of policies or the amount of insurance cannot be said to offer an

incentive to carelessness or destruction by the insured, for his recovery is limited to value. Comp. Laws 1913, §§ 6547 and 6548.

But that part of the policy or lightning clause limiting the liability of the defendant in case of other insurance constitutes a consent to subsequent insurance and a waiver of the forfeiture clause in the policy. Bolte v. Equitable Fire Asso. 23 S. D. 240, 121 N. W. 773.

This court is confined to the construction to be placed upon the policy from the standpoint of the insured. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837; Bolte v. Equitable Fire Asso. supra.

Defendant by its acts and conduct waived forfeiture and is now estopped to assert same as a defense. Expressions by insured to defendant's agent, that he desired such a certain stated amount of insurance on his property (which was more than defendant's policy), and being informed that he could take out other insurance thereafter, gave plaintiff the right to assume that such right was or would be incorporated in the policy, especially when he could not read or write the English language. The agent's knowledge was that of defendant. Independent School Dist. v. Fidelity Ins. Co. 113 Iowa, 65, 84 N. W. 956; Wensel v. Property Mut. Ins. Asso. 129 Iowa, 295, 105 N. W. 522; Bank of Anderson v. Home Ins. Co. 14 Cal. App. 208, 111 Pac. 507; Erb v. Fidelity Ins. Co. 99 Iowa, 727, 69 N. W. 261; Phenix Ins. Co. v. Grove, 215 Ill. 299, 25 L.R.A.(N.S.) 1, 74 N. E. 141; Hulen v. National F. Ins. Co. v. Hartford, 80 Kan. 127, 102 Pac. 52; Western Nat. Ins. Co. v. Marsh, 34 Okla. 414, 42 L.R.A.(N.S.) 991, 125 Pac. 1095; Fitchner v. Fidelity Mut. Fire Asso. 103 Iowa, 276, 72 N. W. 530; Hagan v. Merchants' & B. Ins. Co. 81 Iowa, 321, 25 Am. St. Rep. 493, 46 N. W. 1114; Price v. North American Acci. Ins. Co. 28 Idaho, 136, 152 Pac. 805; McKune v. Continental Casualty Co. 28 Idaho, 22, 154 Pac. 990; Schmidt v. Williamsburgh City F. Ins. Co. 95 Neb. 43, 51 L.R.A. (N.S.) 261, 144 N. W. 1044; Coppoletti v. Citizens' Ins. Co. 123 Minn. 325, 143 N. W. 787; Swedish American Ins. Co. v. Knutson, 67 Kan. 71, 100 Am. St. Rep. 382, 72 Pac. 526.

A retention by the company of unearned premium, or its failure to cancel the policy after it receives notice of additional insurance, constitutes a waiver of the subsequent insurance, and estops the defendant to assert a forfeiture on that ground. Phenix Ins. Co. v. Grove, 215 Ill.

299, 25 L.R.A.(N.S.) 1, 74 N. E. 141; Farmers & M. Ins. Co. v. Bodge, 76 Neb. 31, 106 N. W. 1004, 110 N. W. 1018; Bank of Anderson v. Home Ins. Co. 14 Cal. App. 208, 111 Pac. 507; 19 Cyc. 798, ¶ C; Brashears v. Perry County Farmers Protective Ins. Co. 51 Ind. App. 8, 98 N. E. 889; Western Ins. Co. v. Ashby, 53 Ind. App. 518, 102 N. E. 45; Swedish American Ins. Co. v. Knutson, supra.

GRACE, J. Appeal from the judgment of the district court of Morton county, J. M. Hanley, Judge.

This action is one wherein the plaintiff seeks to recover from the defendant upon a certain fire insurance policy issued by the defendant to the plaintiff, which insured certain property of the plaintiff against loss or damage by fire, lightning, and tornado. The complaint is in the proper and usual form in such cases. It sets forth the issue and delivery of the policy, the amount thereof, the different items insured, the sum for which each item was insured, the total value of the property, and an allegation of the total destruction by lightning and fire of the barn, one of the items insured, on July 25, 1913.

The answer puts in issue the value of the barn and the amount of damages to such barn by reason of lightning and fire, and denies that the defendant's policy was of any force and validity at the time such barn was struck by lightning. Defendant further by way of affirmative defense sets forth in its answer certain conditions of its policy contract, providing the policy should be void if the insured procured any other contract of insurance, whether valid or not, on the property covered in whole or in part by defendant's policy.

The answer further sets forth that plaintiff, without the knowledge or consent of defendant, on July 8, 1913, procured other insurance upon the barn, grain, and live stock with the Northwestern Fire & Marine Insurance Company of Minneapolis, Minnesota, which was a valid and subsisting insurance on said property at the time plaintiff's barn was struck by lightning.

As further defenses the defendant alleges fraud and false swearing by plaintiff in his sworn statement furnished to it by plaintiff at the time of the loss and damage; and for a further defense the provisions of defendant's policy contract relating to prorating in the event of other insurance are pleaded in the answer.

The facts concisely stated are substantially as follows: The defendant, the Middlewest Fire Insurance Company, of Valley City, North Dakota, by its policy contract of insurance dated September 16, 1912, then issued and delivered to the plaintiff, insured plaintiff for a period of five years against all direct loss or damage by fire, lightning, and tornado to certain property for stated amounts as follows: On barn, $1,000; on grain, ground feed, and seed in building or in stacks, $350; on horses, mules, and colts, $400.

On the 8th day of July, 1913, the plaintiff procured other and additional insurance on some of the property covered and described in defendant's policy. Such additional insurance was a policy contract of insurance procured from the Northwestern Fire & Marine Insurance Company of Minneapolis, Minnesota, and was for $3,275,—$1,200 of which was insurance upon the same barn covered by defendant's policy, $565 on horses, mules, and colts, $200 on hay, fodder, and silage, and other small amounts on various items of property. The policy contract of insurance with the Northwestern Fire & Marine Insurance Company was issued for a term of three years from the 8th day of July, 1913.

On the 25th day of July, 1913, the barn was struck by lightning, whereupon fire immediately ensued, resulting in the total destruction of the barn.

The plaintiff in his complaint claims the value of the barn to be $2,500. The value of the barn was proved by plaintiff's witnesses to the satisfaction of the jury, and the jury found in favor of the plaintiff, thus, as defendant concedes, disposing of this question. The value of the barn, therefore, may be considered to be, as claimed by plaintiff, of the value of $2,500. The total destruction of the barn by lightning and fire at the time heretofore stated was also conclusively determined by the jury.

With this statement of facts in mind, we may proceed to consider the issues presented for our consideration.

The defendant at the trial in the court below abandoned the issue of fraud and false swearing, which leaves for our consideration the following propositions only: (1) The provision in the policy contract against additional insurance; (2) the prorating provision of the policy contract and the lightning clause; (3) waiver and estoppel by the defendant of the provision of the policy contract against additional insurance by

failure to return the unearned premium and to cancel the policy after notice of the breach of the conditions of the policy contract.

As affecting the present case, the third proposition above mentioned relating to waiver and estoppel by the defendant is of the greater importance and in reality decisive of the case. In connection with this proposition, however, we will be aided by considering at the same time and in connection therewith the first proposition, which relates to the provision in the policy contract against additional insurance.

The defendant's policy bears date September 16, 1912, and is for the full term of five years, and would terminate according to its terms on the 16th day of September, 1917. The Northwestern Fire & Marine policy was issued the 8th day of July, 1913, and by its terms terminated the 8th day of July, 1916. Each policy was for a definite time, and the premium in each case was paid at or about the time of the issuance of the policies. Each policy covered the barn in question. The defendant's policy provided for $1,000 insurance on such barn, and the Northwestern Fire & Marine Insurance Company's policy provided for $1,200 insurance on the barn. A period of a little more than nine months intervened between the issuing and delivery of the defendant's policy and the issuing and delivery of the Northwestern Fire & Marine policy to the insured. The premium paid the defendant for its policy of insurance was $43.75, which was the full premium for the full five years.

It is evident that the defendant's policy went into effect upon its issuance and delivery, and that the risk was at that time assumed by the defendant. The defendant further claims that, at the time of the issue and delivery to the insured of the policy in the Northwestern Fire & Marine Insurance Company, its liability ceased, for the reason that the additional or double insurance brought about by the insured procuring the additional policy in the Northwestern Fire & Marine Insurance Company without the written consent of the defendant avoids the defendant's policy. The defendant, however, claims the right to retain the whole of the premium notwithstanding that it claims that its policy became void after a little more than nine months of the five-year period had expired, and this on the principle that the policy having once attached and the risk having been once assumed for a time, no matter how short the time, entitled it to retain all the premium. This was the theory of the defendant in the trial of the case in the court below, and

special stress is laid upon this point in its brief in this court. From a thorough examination thereof it is clear that a demand for the return of the premium by the plaintiff would have been useless, and, if a demand would have been necessary, the attitude of the defendant relieved the plaintiff from any such requirements; and so far as this case is concerned, in view of all the circumstances, a demand for return of unearned premium and a tender of the return of the policy was not necessary to entitle the plaintiff to a return of all unearned premiums.

Section 6533, Compiled Laws of 1913, is as follows: "If a peril insured against has existed and the insurer has been liable for any period, however short, the insured is not entitled to a return of premium so far as that particular risk is concerned, unless the insurance was for a definite period of time, in which case he is entitled to a proportionate return under §§ 6517 and 6530."

The defendant's policy in question was for a definite time. It became effective for a period of five years from noon on the 16th day of September, 1912, until noon on the 16th day of September, 1917. The defendant's policy did not become absolutely void by reason of the insured taking out a subsequent policy of insurance in another company covering some of the same property insured by defendant's policy. The most that can be claimed by the defendant is that its policy became voidable by reason of the insured taking out such additional or double insurance without the written consent of the defendant indorsed upon its policy. It is conceded that the written consent, and the indorsement of such consent on defendant's policy, were not procured by the insured. The only reason, if any, that double or additional insurance would not be permissible so long as it does not exceed the cash value of the property insured is that such insurance is effected without the written consent of the first insurer indorsed upon its policy. In the case at bar, if the insured had applied to the defendant and procured its written permission indorsed upon its policy, permitting the insured to take additional or double insurance for $1,200 in the Northwestern Fire & Marine Insurance Company, then there could have been no contention by defendant that it could avoid its proportionate part of the loss, if such loss ensued.

In such case there would be double insurance, but with the consent

of the insurers. Section 6547, Compiled Laws of 1913, defines double insurance as follows:

"A double insurance exists when the same person is insured by several insurers separately in respect to the same subject and interest."

Section 6548 provides: "In case of double insurance the several insurers are liable to pay losses thereon as follows: 1. In fire insurance each insurer must contribute ratably towards the loss without regard to the dates of the several policies."

It therefore appears that the policy contract would not be illegal or void on account of other contracts of insurance on the same property, or, in other words, double insurance. If the insurer in its contract is protected against liability on its policy by reason of the insured procuring other or double insurance without the knowledge or consent of the insurer, nevertheless, the insured can enforce the contract against the insurer if the conduct, statements, or actions of the insurer are such as to constitute a waiver of such provision in the contract, or if the insurer retains the unearned premium after having received full notice and knowledge of the loss and knowledge and notice of the double insurance.

The testimony in this case shows that Burmeister, the local agent of the defendant, Phirmister, who was engaged in the lumber business at Glen Ullen, and Henry L. Prissler, the adjuster for the defendant company, about ten days subsequent to the fire went to the premises of Yusko, where proof of loss was taken by the adjuster on behalf of the company, which, as the testimony shows, was reduced to writing. Mr. Prissler, the adjuster, testifies that it was about two weeks after this visit that he became aware of other insurance on the same property. It follows, therefore, that knowledge of the double insurance was brought home to the defendant, according to the testimony of its witness, within two weeks after the proof of loss. The testimony of the adjuster is that, at the time of the proof of loss, he asked Yusko if there was other insurance upon the property, and Yusko said there was not. After the defendant had received full knowledge of the double insurance it nevertheless continued to claim the premium as earned for the full five years, and the claim and theory of the defendant at all times is that it is entitled to retain all the premium for the whole five years, and this without incurring any liability after the time of the double insurance. With this we cannot agree. The contract did not become illegal, fraudu-

lent, or void by reason of procuring the double insurance. The most that can be said is that it became voidable. It is not improbable, if the defendant had, at the time of acquiring knowledge of the double insurance, given notice of the cancelation of the policy and tendered back the unearned premium, it might have escaped liability; but not having done this, and having retained all the unearned premium, and claiming the right to retain it, its retention became an election to consider the policy in full force and effect, and operated as a waiver of any defenses which the defendant may have had.

That part of the defendant's policy contract relating to the existence, procuring, or making of other contracts of insurance upon the same property, reads as follows: "This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured *now has* or shall hereafter make, or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

An examination of the Northwestern Fire & Marine Insurance policy discloses an exactly similar provision, it being also a standard policy. If the reasoning of the defendant is sound when it claims its policy was absolutely void for the reason that other insurance was procured, then also would the policy of the Northwestern Fire & Marine Insurance Company likewise be void; for at the time it was issued and delivered to the insured, the insured at that time had insurance on the same property with the defendant. It will be noticed that the provision also refers to the *existence* of other insurance *at the time of the issuing of the policy*. But the defendant in its answer uses the following language concerning the Northwestern Fire & Marine Insurance policy contract: "This defendant further alleges that said policy contract of said Northwestern Fire & Marine Insurance Company was still outstanding, and constituted valid and subsisting insurance on said property, at the time plaintiff's said barn was struck by lightning, as hereinbefore and in plaintiff's complaint set forth and alleged."

The insured had insurance upon this barn with the defendant at the same time he took the Northwestern Fire & Marine Insurance policy, which contained the same clause relied upon by the defendant, and which says that the policy shall be void if the insured *now has* or shall hereafter make or procure any other contract of insurance, whether

valid or not, upon the property covered in whole or in part by its policy. If the meaning and force contended for by the defendant be given to its reasoning, the policy of the Northwestern Fire & Marine Insurance Company never went into effect, for the reason that at the time of its issuance and delivery there was other insurance on the same property, and the policy would be void from its inception. The defendant, however, notwithstanding the fact that its policy was long in effect prior to the time of the issuance of the policy of the Northwestern Fire & Marine Insurance Company, and notwithstanding the clause in the policy of the Northwestern Fire & Marine Insurance Company providing the policy should be void if there existed or was procured other insurance on the same property, alleges the validity and subsistence of the Northwestern Fire & Marine insurance on the barn at the time it was struck by lightning. It seems to us, therefore, that if either policy was void it must have been the policy of the Northwestern Fire & Marine Insurance Company, and if it were void it was void from its inception and never attached, and no risk was ever assumed by it, so it never was an insurance. If this were true, then there was no additional or double insurance on the property so far as the defendant was concerned. We do not believe, however, that the defendant's reasoning in this branch of the case is sound. As before stated, we are of the opinion that the most that can be said is that either of the policies were not void, but merely voidable. The provisions referred to in the policy could be waived or the conduct and acts of the defendant could be such as to create an estoppel. Each of the policies was in force and effect at the time of the loss. If the defendant's policy were voidable it did not take any steps to assert the avoidability of the policy. It had collected all of the premium for the entire period of time. It did not offer at any time to return it, and when suit was brought against it, in its answer it made no tender of the return of the premium, nor did it demand the cancelation of the policy, but simply denied the policy was in force and effect or of any force and validity whatsoever. The contract of double insurance is not illegal, and it is enforceable unless the insurer avails itself of its defenses, or if the insurer, after full knowledge of the double insurance, retains the full amount of the unearned premium, gives no notice of the cancelation of the policy, and maintains the same attitude throughout the litigation, when the

insured brings his action to recover upon the above policy. It seems clear that the defendant by its conduct and acts has waived the benefits of any of the clauses referred to, and is estopped from denying its liability upon the policy. This is true even if the defendant had no knowledge of the double insurance until after the loss occurred. There is testimony, however, tending to show that the defendant at the time it issued its policy had knowledge that other insurance would be procured by reason of statements made by the insured to defendant's agent. The testimony by Yusko with reference to what was said at the time of procuring the policy from the defendant is as follows:

"I asked Burmeister, I said, I want insurance for my barn. He asked me how much I wanted. I want from $1,800 to $2,500. He told me, that is too much. I said, it cost me over $1,800 for materials, besides my work. He said, I would give you $1,000, and you got a chance to take out other insurance if you want to."

If this testimony is true, and the credibility of the witnesses was a matter for the jury, it would be sufficient to constitute a waiver of the clause against other insurance.

With reference to the same matter, Burmeister, the defendant's witness and agent, testified that he made the following statements to Yusko at the time of the application for insurance with the defendant company:

"I will tell you what I told him. He wanted $1,500 to $1,800 insurance, and I found out what his lumber bill was, and we went over it and estimated the stone work. I told him [Yusko] that it was too much. You will be paying for something you will never get. One thousand dollars is all that you ought to have in insurance, because if you take more than that you will be paying for something you cannot get."

This statement differs materially from the statement of Yusko concerning the same matter. It was for the jury to determine which of the two witnesses was entitled to the greater credibility, and evidently the jury believed the statements of Yusko, as they determined the case in his favor.

In the case of Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799, an action brought by the insured against the defendant company for the recovery of the loss, the defendant pleaded the for-

feitures of the policy, and by way of counterclaim also pleaded the premium given by the plaintiff as consideration for the issuing of the policy. It was held in such case that the pleading of such counterclaim operated as a waiver of the forfeitures of the policy. That case, therefore, lays down the law that the forfeitures of the policy may be waived, and in that case was waived, by the pleading of the counterclaim. The principle laid down in that case is applicable to the case at bar. It makes no difference that the premiums were paid in cash at the time of the issuance of the policy. In the case at bar, when an action was maintained for the loss, if the defendant intended to rely upon the forfeitures contained in its policy, and after pleading such forfeitures, it was its duty to plead and tender the return of the unearned premium, and a failure to do so would operate as a waiver of the forfeitures relied upon. It was held in the Johnson Case that the policy, by reason of the forfeitures, was not void but voidable at the option of the insurer. In the Johnson Case, after the knowledge of the forfeitures, the defendant saw fit to demand judgment for the premium. In the case at bar, after knowledge of the forfeitures, the defendant saw fit to retain all the unearned premium, and claimed to retain it as a matter of right, and has strenuously maintained its right to retain all the unearned premium, and earnestly insists on that right in this court. This being true, the defendant is estopped from denying liability on its policy.

In the case of Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837, we find in the syllabus thereof the following: "Where a fire insurance company, with full knowledge of facts which under the stipulation contained in the application or policy renders such policy void at its inception, issues and delivers the same and collects and retains the premium therefor, it will be deemed in law to have impliedly waived such forfeitures, and will not be permitted to allege the invalidity of the policy, in an action to recover for loss thereunder." Where a policy of insurance has been delivered and the premium collected with full knowledge of all the facts, it would operate as a fraud upon the insured if the insurance company was permitted to avoid the policy after the loss, by alleging the invalidity thereof at its inception on account of stipulations contained therein.

The same reasoning applies even if the invalidity, if any, of the

policy, is brought about at a time subsequent to the inception of the policy, by reason of some act of the insured which results in some of the conditions of forfeiture in the policy becoming operative. If in such case the insurance company desires to avoid liability upon the policy, it must, in making such election return, offer to return or tender all of the unearned premium. Unless it does so, it must be and is held to have elected to continue the policy in full force and effect. And this is true even though the premiums had all prior thereto been voluntarily paid.

In the case of Schreiber v. German American Hail Ins. Co. 43 Minn. 367, 45 N. W. 708, the following language appears: "After it [the insurance company] learned that it might elect to avoid the policy, honesty required that before so electing it should restore the money, payment of which was thus exacted. The retention of that money was—in morals, certainly—inconsistent with an intention to avoid the policy. . . . Under the circumstances it was defendant's duty as soon as it learned of the breach of condition to determine whether it would abide by the policy and retain the premiums, or restore them and elect to avoid it. It has never returned or offered to return the premiums, and, by retaining them, must be deemed to have elected to abide by the policy."

The principles in the Schreiber Case were to some extent discussed and distinguished, but not reversed, in the case of Taylor v. Grand Lodge, A. O. U. W. 96 Minn. 441, 3 L.R.A.(N.S.) 114, 105 N. W. 408.

In the case at bar the defendant admits receiving the premium for the whole time. Its agent at the time of the issuance of the policy had some information that other insurance would be procured, and the knowledge of the agent was the knowledge of the company, and immediately after the time of the loss the defendant acquired full knowledge of the other insurance, but, notwithstanding the existence of all such matters and knowledge, the defendant still retains all the premium, and claims the right to all such premium, and vigorously maintains such claim in this court, but seeks to avoid any liability upon its policy, claiming the same is of no force or effect. We disagree with the contentions of the defendant, and hold that its policy is in full force and effect, and defendant is liable thereon.

We cannot discuss all the authorities cited by the appellant, but will consider fully the two upon which appellant most relies. The first is Parsons v. Lane (Re Millers' & Mfrs.' Ins. Co.), 97 Minn. 98, 4 L.R.A. (N.S.) 231, 106 N. W. 485, 7 Ann. Cas. 1144. The appellant claims this case, with the authorities cited therein, is conclusive upon the principle, where the policy is not illegal and once attaches, and the risk is assumed, the entire premium is earned; and, if forfeiture results from breach of a promissory warranty or of a condition subsequent, the insurer cannot be required to return any part of the premium upon the theory that it is all earned when the risk attaches. Notwithstanding the case cited and the authorities therein enumerated to sustain this contention, we are satisfied that such decisions do not rest upon sound principles of justice, nor are they securely based upon the far-reaching principles of common honesty and fair dealing which should exist between the insurer and the insured, nor are they in harmony with the principles of right and equity between the parties, and are not based upon reason which merits the approval of conscience. The rule laid down in the Millers' & Mfrs.' Ins. Co. Case, and the cases therein cited to sustain the point which we are now discussing, rests upon a foundation of technicality rather than on the broad basis of justice, equity, and fair treatment to be accorded all parties to the contract. The insured is just as important a party to an insurance contract as is the insurer. If it were not for the insured there would be no insurers. The main business of courts when matters of contract between the insured and insurer comes before them is to give the contract such a construction according to its terms as would result in justice and fairness to each of the parties to the contract. We quote with approval the splendid and enduring language of Lord Mansfield in Tyrie v. Fletcher, Cowp. pt. 2, p. 666, 98 Eng. Reprint, 1297, where, speaking of the subject we are considering, he said: "Where the risk has not been run, whether its not having been run was owing to the fault, pleasure, or will of the insured or to any other cause, the premiums shall be returned, because a policy of insurance is a contract of indemnity. The underwriter receives a premium for running a risk of indemnifying the insured, and whatever cause it would be owing to, *if he does not run the risk, the consideration for which the premium or money was put into his hands fails and therefore he ought to return it."*

Such a principle appeals to us at once as being sound, right, just, and fair, and at once our conscience stamps thereon its approval. Upon such a principle as this for a foundation it is well to rest the point we have been discussing.

The defendant having received in cash and retained the premium for the whole time, the policy being for a definite time, and it further claiming the right to retain all of such premium, it is estopped to deny its liability upon the policy.

The second case upon which the appellant relies is the case of Hronish v. Home Ins. Co. 33 S. D. 428, 146 N. W. 588. Upon a close examination of this case we are of the opinion that it is only in point to a limited extent, for reasons which we will point out. In South Dakota, under chapter 164 of the Laws of 1909, not only is the standard form of fire insurance policy provided by such law, but the form of the policy is enacted into law, and the standard form of such policy is set out in full in such chapter of the South Dakota law. Therefore, in South Dakota, not only the form of the contract of fire insurance is provided, but such contract is enacted into a law by the legislature of that state. The enactment of the form of the policy in South Dakota into law to a large extent relieves the court of that state of the necessity of interpreting the contract of fire insurance. What is true as to South Dakota in respect to the matter we have been discussing is not true as to North Dakota. North Dakota, by § 6625, Compiled Laws of 1913, has provided a standard form for use by fire insurance companies doing business within the state, which form must correspond to a printed form of contract filed in the office of the Commissioner of Insurance, but the form of such standard policy is not enacted into law, nor has such form become part of the statutory law of this state. For this reason the standard form of policy as filed in the office of the Commissioner of Insurance of this state provides only the form of the contract of fire insurance, but does not prescribe the law of such contract, nor the construction thereof. This is clearly shown by § 6626, Compiled Laws of 1913, which reads as follows: "Policies of insurance in the form prescribed by the last section shall be in all respects subject to the same rules of construction as to their effect, or the waiver of any of their provisions, as if the form thereof had not been prescribed." It will be seen, therefore, that the legislature of South Dakota has not

only provided a form of the contract, but also the law of the contract, having made the same a part of the statutory law. That is the reason why the South Dakota court said: "Its provisions not only constitute the contract between the insurer and the insured, but also the law governing the rights of the parties as well." The same reasoning, therefore, cannot be applied to the case at bar as to the Hronish Case. The provisions of our standard form of contract of fire insurance rest upon the same basis as any other written contract, and are subject to the same rules of construction, and the law of waiver and estoppel may be applied to such contract with the same force and effect as to any other written contract.

Considering the matter of prorating, the second proposition referred to in the first part of this opinion, to which reference is also made in paragraph 4 of defendant's answer, we are of the opinion that the matter was fully and fairly considered in the court below, the court having given full, positive, and clear instructions with reference thereto to the jury, which were acted upon and followed by the jury.

The total insurance upon the barn was $2,200, $1,200 of which was in the Northwestern Fire & Marine Insurance Company. The court below instructed the jury that the defendant, if liable at all, was liable to pay 10/22 of the loss. This was a proper instruction, as it was defendant's *pro rata* share of the liability, if liability was found to exist.

We do not think it necessary to further analyze any part of the policy contract in question, nor the lightning clause, as to whether it amounted to a permit to other insurance; and as this opinion has already become quite lengthy, and as the main questions involved in this case have received quite thorough attention, we do not deem it necessary to extend the discussion any further. All of the instructions of the court which are assigned as error we are of the opinion were proper instructions, and there was no error in giving such instructions. All of the other errors assigned by appellant have been considered, including all of the rulings of the court upon testimony admitted or excluded, and we find no reversible error therein.

The judgment of the lower court is therefore in all things affirmed, with costs.

ROBINSON and CHRISTIANSON, JJ., concur in result.

BRUCE, Ch. J. I dissent.