J. O. HORSWILL, Respondent, v. NORTH DAKOTA MUTUAL FIRE INSURANCE COMPANY OF NORTH DAKOTA, a Corporation, Appellant.

(178 N. W. 798.)

**Appeal and error — insurance — insurer's agent held to have notice of occupation by tenant; vacancy held for jury; what constitutes vacancy; construction of clause avoiding policy for vacancy; sufficiency of proof of loss; waiver of proof of loss; statute as to proof of loss construed; defenses in action on insurance policy not urged in motion for directed verdict cannot be considered on appeal; when insured bound by amount of premium collected; necessity of return of unearned premiums.**

1. Plaintiff brought this action upon a policy of fire insurance, in the sum of $2,000, covering a farm dwelling, which was totally destroyed by fire. The defenses interposed were: (1) That the application states the premises are occupied by the owner, whereas they were in fact occupied by a tenant; (2) that a vacancy occurred in the occupancy of the dwelling; (3) that, subsequent to the issuance of the policy, plaintiff placed additional encumbrances upon the land; (4) failure to make proof of loss; (5) no waiver by failure to return unearned premium and a claim that there is no unearned premium, the rate for occupancy by a tenant being enough higher than the premium, when occupied by the owner, that it equals the alleged unearned premium; (6) errors of law in the instructions given by the court. The action was tried to a jury, and its verdict was in favor of plaintiff. Judgment was entered upon the verdict and appeal therefrom perfected to this court.

2. *Held,* for reasons stated in the opinion, that the judgment should be affirmed.

Opinion filed June 22, 1920.

Appeal from a judgment of the District Court of Hettinger County, Honorable *F. T. Lembke,* Judge.

Affirmed.

*Winterer, Combs, & Ritchie,* for appellant.

Where the plaintiff is bound by the terms of his policy in the event of a loss to furnish the insurer certain proofs of loss, but wholly fails to do so within the time limited by the policy, or at all, he forfeits his right to a recovery under the policy unless the defendant has waived the requirement. Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799.

The abandonment of a house as an actual place of residence, permanently or temporarily, is a vacancy, removal, or change of occupancy such as is contemplated in the provisions of the policy under discussion. Cummins v. Agricultural Ins. Co. 5 Hun, 554; Bennett v. Agricultural Ins. Co. 50 Conn. 426.

"Certainly a mere occasional sleeping therein is not enough to constitute of itself occupancy as a dwelling, even though it be by the owner." 19 Cyc. 731, ¶ D, and cases cited; Dohlantry v. Blue Mounds Fire & Lightning Ins. Co. (Wis.) 53 N. W. 448; Weidert v. State Ins. Co. (Or.) 24 Pac. 242.

Occupancy implies the actual use of a dwelling house as a dwelling place, and the insurer has a right, by the terms of such a policy, to the care and supervision which would be involved in such an occupancy. Bonefente v. Ins. Co. (Mich.) 43 N. W. 683; Limburg v. German Ins. Co. (Iowa) 57 N. W. 626; Herman v. Ins. Co. 81 N. Y. 184, 85 N. Y. 163; Cook v. Ins. Co. 70 Mo. 610; Insurance Co. v. Cherry, 84 Va. 72, 3 S. E. 876; Ins. Co. v. Kyle (Ind.) 24 N. E. 727; Ins. Co. v. Padfield, 78 Ill. 169; Ashworth v. Ins. Co. 112 Mass. 422; Insurance Co. v. Wells, 42 Ohio St. 519; Sleeper v. Ins. Co. 56 N. H. 401; Moore v. Ins. Co. 64 N. H. 140; Fesche v. Ins. Co. 74 Iowa, 676, 39 N. W. 87.

*Murray & Jacobsen,* for respondent.

The sufficiency of the evidence to support the verdict cannot be assailed for the first time in the supreme court, but this question must first be raised in some appropriate manner in the trial court. The appropriate manner is either a motion for a directed verdict or a motion for a new trial. Buchenen v. Occident Elevator Co. 33 N. D. 346; Morris v. Mpls. St. P. & S. Ste. M. R. Co. 32 N. D. 366.

Where a motion for a nonsuit or a directed verdict is made, the appellant court will consider only the grounds urged in the trial court,

as appellant will not be permitted to change theirs or to add others in the supreme court. Erickson v. Wiper, 33 N. D. 225; Null v. Chicago, B. & Q. R. Co. (Neb.) 168 N. W. 32; Reed v. Boland (S. D.) 140 N. W. 694; Minder & J. Land Co. v. Brustuen (S. D.) 140 N. W. 251; Nichols & S. Co. v. Marshall (S. D.) 132 N. W. 791; Black Hills Brewing Co. v. Middle West Fire Ins. Co. 140 N. W. 690; Kolka v. Jones (N. D.) 71 N. W. 559; Howie v. Bratrud (S. D.) 86 N. W. 747; Hanson v. Lindstrom (N. D.) 108 N. W. 799.

The agent of the company knew that the insured was not occupying the premises in person, but was occupying them by a tenant, and that the premises would be so occupied during the life of the policy. This was to the knowledge of the company, and it is now estopped to take advantage of the provision of the policy and the statement in the application that the premises should be occupied by the owner. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316; Schwinderman v. Eastern Casualty Co. 38 N. D. 584; Stotlar v. German Alliance Ins. Co. 23 N. D. 346; East Side Trust & Sav. Bank v. McGinnis (Mich.) 163 N. W. 951; French v. State Farmers Mut. Hail Ins. Co. (N. D.) 151 N. W. 7; Dodge v. Grain Shippers' Mut. Fire Ins. Assn. (Iowa) 157 N. W. 955; Anderson v. Wilson (Iowa) 136 N. W. 374.

A mere temporary absence of the occupants with the intention of returning, when the premises are left in their usual condition, does not amount to a vacancy. Kampen v. Farmers Mut. F. Ins. Co. 133 Minn. 163; Soubert v. Fidelity Phenix Ins. Co. (S. D.) 136 N. W. 103; State v. Root (Wis.) 54 N. W. 35.

By retaining the premium after acquiring knowledge of the facts it now sets up as a defense, the defendant is estopped now to set up such a defense. Yusko v. Middlewest Fire Ins. Co. (N. D.) 166 N. W. 539; Collins v. Iowa Mfrs. Ins. Co. (Iowa) 169 N. W. 199.

The testimony concerning the conversation between the defendant agent and insured at the time a policy was issued was clearly competent and material. Leisen v. St. Paul F. & M. Ins. Co. supra.

GRACE. J. This action is one to recover upon a policy of fire insurance upon a dwelling house, which was totally destroyed by fire, and which prior thereto was located upon plaintiff's farm. The policy is the standard form in use in this state. The complaint properly

states a cause of action upon it, and the answer, in addition to a general denial, sets forth several defenses based upon certain terms of the policy, to which reference will be subsequently made.

The facts are short and simple. The policy in question was issued on the 9th day of July, 1916, in the sum of $2,000, on a certain two-story shingled roof frame building, owned by plaintiff, and situated on northwest quarter of section 30, township 135, range 94. It was written for a three-year period, and was effective from the 9th day of July, 1916, until noon the 9th day of July, 1919. The amount of premium was $30, which was paid. It was a renewal policy, the dwelling having been theretofore insured by the defendant. The application for the previous insurance was executed in 1913, and the inference is that the previous insurance was for three years. No new application was signed at the time the present policy was issued. No objection is made to the consideration of this application in connection with the renewal policy, and it is not necessary to state what would be our conclusion in that regard if such objection had been made. On December 13, 1918, the house was entirely destroyed by fire. Immediately after the fire the plaintiff notified defendant of the loss. He wrote to it at four different times, in each letter calling attention to the loss under the policy. The defendant apparently paid no attention to these letters and sent no blanks upon which defendant might make proof of loss. Some time after plaintiff had written the last letter, an adjuster by the name of Velzey came to Regent and had a talk with plaintiff with reference to the loss. The adjuster inquired from plaintiff if he had a total loss and was answered in the affirmative. He afterwards went out and examined the loss and reported to plaintiff, in effect, that it was a total loss, saying, in answer to plaintiff's question: "Is it a total loss or not," "All there is is ashes." The plaintiff never made any report or proof of loss other than the notices above mentioned.

Defendant seeks to avoid liability on the policy mainly for the following reasons:

(1) That the application states the premises are occupied by the owner, whereas they were, in fact, occupied by a tenant.

(2) That a vacancy occurred in the occupancy of the dwelling.

(3) That subsequent to the issuance of the policy plaintiff placed additional encumbrances upon the land.

(4) Failure to make proof of loss.

(5) No waiver by a failure to return unearned premium, and a claim that there is no unearned premium, the rate for occupancy by a tenant being enough higher than the premium when occupied by the owner that it equals the alleged unearned premium.

(6) Errors of law in the instructions given by the court.

With reference to the question of occupancy, it may be said that, while it is true the application states that it is occupied by the owner, there is competent evidence which clearly shows that at the time the application was taken for the insurance the plaintiff had a talk with defendant's agent, who took the application, with reference to the occupancy of the land by plaintiff or by his tenant. Plaintiff's testimony is to the effect that the agent asked him if there was a tenant living there, and that he told him there was, and that he told him, further, that he (plaintiff) was living in Regent, and he said that was all right, and that he (plaintiff) told him "that he never would live in it himself, that he knew of at that time." The plaintiff has had a tenant thereon ever since he made application for and took out the insurance, and had one thereon at the time of the fire, whose name is Frank Busholl, who rented and took possession of the farm in the month of October, 1918. We are of the opinion that there is conclusive proof that the agent of defendant had full knowledge and notice of the fact that the place would be occupied by a tenant during the time the policy was in effect; that the act of the agent in taking the application for the insurance being one which he was authorized to do, and which was within his authority, that the principal must also be deemed to have knowledge and notice. The agent, at the time, knew of the tenancy, and knew that the dwelling would be occupied by a tenant, and not by the owner, and he should have so stated those facts in the application, and, not having done so, we think the defendant is estopped to urge the occupancy of the tenant to avoid the policy. This principle is upheld in the case of Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A. (N.S.) 539, 127 N. W. 837; Schwindermann v. Great Eastern Casualty Co. 38 N. D. 584–590, 165 N. W. 982; Comp. Laws 1913, § 6350; French v. State Farmers' Mut. Hail Ins. Co. 29 N. D. 426, L.R.A. 1915D, 766, 151 N. W. 7.

Vacancy is another defense relied upon by the defendant to avoid its

liability under the policy. This question, we believe, is one for the jury. By a verdict in plaintiff's favor it has, in effect, found there was no vacancy. After Busholl entered the land and took possession, he moved in some furniture, among other things, a stove, beds, chairs, tables, dishes, clothes, etc. He was a bachelor. One Sagmiller and wife, in the latter part of 1918, also stayed at the house with him for a period of four weeks while he and they were working upon the farm. Two days prior to the time of the fire Busholl slept in the house. At that time there was a bed, bedclothes, spring, and mattress there. He slept on the premises all the time after he rented it, except the nights he slept at Sagmiller's. It appears, also, from the testimony that he and Sagmiller were working together at Sagmiller's coal mine for the purpose of getting out their coal for the winter, and during that time the plaintiff stayed at Sagmiller's place. Two or three days before the fire he went over to the dwelling house in question for the purpose of making room to hold the coal for the winter. As near as may be gathered from the testimony, his absence was a mere temporary one, and he intended to return to the dwelling, and this though he had moved part of the furniture out of the house. There are many reasons why he may have moved out part of the furniture temporarily. He may have desired and needed to have used it temporarily elsewhere. The fact that he went over to see about fixing room for the coal shows that he intended to return, and his testimony is to the effect that his intent was to return. Other circumstances would also show this, as he had rented the land for the following year and intended to and did crop it. We further think there is a failure on part of the defendant to show vacancy, as the moving out of part of the furniture, or even all of it, is not sufficient of itself to show a vacancy or abandonment of the dwelling entirely. There is no showing but what Busholl had stock, machinery, and all of the other things necessary to farm the premises, on the place. Neither is there any showing to the effect that the owner did not have other furniture at the premises. A clause in the policy which provides that it shall become void if a vacancy occurs in the manner therein stated must be strictly construed. The policy provided if the dwelling became vacant for a period of ten days this would avoid the policy. As above stated, the question of vacancy was a question of

fact for the jury, and it has decided against the contention of the defendant, and we think there is substantial evidence to sustain it.

Another defense is that there was no proof of loss. Certainly there was sufficient notice of loss. Plaintiff repeatedly sent written notice to defendant of the loss. Section 6545, Comp. Laws 1913, so far as applicable to this case, in effect provides: Upon notice of a loss being given to the insurer on behalf of the insured, the insurer shall, within twenty days after such receipt of such notice, furnish to the insured a blank form of proof of loss. The insured shall have sixty days after such blank form is furnished in which to make such proof of loss. If the insurer shall fail to furnish such blank form of proof of loss, he is deemed to have waived such proof, and any agreement made to waive the provisions of this section is void.

The evidence fails to disclose that such blanks were furnished the plaintiff, and we think the company has waived any right of defense for failure to make proof of loss. It is also clear in this case that a proof of loss would have availed nothing. The plaintiff had notice of the loss,—this, it must admit,—and the loss was a total one, and the only thing that could be stated in the proof of loss, were it made, was that the loss was the amount of the policy, $2,000. We think, also, the defendant having neglected or refused to answer plaintiff's notice of loss, or to give the matter any proper attention, together with the failure to furnish blanks, operated as a waiver of proof of loss. The agent of defendant finally came out to the place, and knew of his own knowledge that the loss was total, and his knowledge was the knowledge of the company.

Section 6624, Comp. Laws 1913, provides: "Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, and that property insured shall be destroyed without fraud on the part of the insured or his assigns, the stated amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured." It is clear in this case that the loss was total. Under that section the amount of the loss is the face of the policy. The defendant had notice of the loss and knew that it was total. Its agent ascertained that the loss was total. A proof of loss could have given no greater information, nor could it have changed the amount of the loss. That section also makes it unneces-

sary, where the loss is total, to produce any evidence of the value of the building insured. The value thereof in such case is determined by the amount written in the policy, and, except for fraud, that amount is conclusive. The defendant could have ascertained the value before issuing its policy. If it did not do so, it should have. As it has failed to do so, and there is no fraud, it is bound by the amount for which the buildings are insured. It is not claimed in this case there is any fraud, and the record discloses none. The plaintiff did introduce competent testimony showing the value of the dwelling to be $3,800, but this was entirely unnecessary, and, in this case, entirely superfluous.

As to the defense that subsequent to the issuance of the policy the plaintiff placed additional encumbrances upon it, we are convinced the defendant cannot, at this time, rely upon and claim anything by reason thereof. At the close of plaintiff's case, and again at the close of the entire case, the defendant made a motion for a directed verdict, basing such motion upon two grounds, *viz.*, (1) That the premises were vacant; (2) that there was no proof of loss. The ground of placing encumbrances upon the property subsequent to the issuance of the policy was not included as one of the grounds for a directed verdict. The rule would seem to be that where a motion for a nonsuit or a directed verdict is made, the appellate court will consider the grounds urged in the trial court, and none other, and that on appeal the appellant will not be permitted to change the grounds relied upon in the motion or add others to it in the appellate court. First Nat. Bank v. Laughlin, 4 N. D. 391, 61 N. W. 473; Erickson v. Wiper, 33 N. D. 225, 157 N. W. 592, and cases and authorities cited therein. We think this disposes of appellant's contention in this regard. However, in this case it does appear from the evidence of plaintiff, in effect, that at the time the application was taken the plaintiff told the agent of defendant that the premises were encumbered, and that he, being in business, that it was likely he would place other encumbrances upon the land. Assuming this to be true, we think that the defendant would be deemed to have knowledge of such encumbrances or intended encumbrances at the time the application was taken. If this is true, we doubt if the defendant could avoid liability on the policy unless it could show a positive increase of risk. However, as we view the matter, a decision of this question is not necessary to a decision of this case; for, as above in-

dicated, we think on this appeal defendant is restricted to the matters stated in its motion for a directed verdict.

Adverting to the matter of unearned premium, we think that the premium paid must be taken as the proper premium for the policy issued in this case, even if it is a premium such as should have been paid where the premises are occupied by the owner, and not a tenant. Defendant had knowledge that the premises were occupied and would be occupied by a tenant. The plaintiff had a right to rely upon the amount of premium paid as being the proper premium in amount. The defendant, having knowledge of the true status at the time of the application and the issuing of the policy, is bound by the amount of the premium charged, even if it be somewhat smaller than should have been charged, where the premium charged was not intended to be discriminatory, but, if wrong at all, was wrong as the result of a mistake on its part. There is no claim in this case that the premium charged was intended to be a discriminatory one, and it is held that it was not so intended. In these circumstances, there was clearly some unearned premium; that is, the amount which would be left unearned of the premium from the date of the fire to the expiration of the policy. The defendant made no offer to return the unearned premium, and we are of the opinion that it cannot retain it and still deny liability on the policy. Yusko v. Middlewest F. Ins. Co. 39 N. D. 66, 166 N. W. 539.

While the instructions of law given by the court are not, perhaps, model in every respect, they having been given orally, and hence perhaps were not as clear a statement of the law on the subject-matter involved in the action as would have been given by the learned trial court if it had first reduced the instructions to writing and then have given them, nevertheless, we are convinced there is no prejudicial reversible error therein. We think, taken as a whole, they fairly state the law of the case and contain no reversible error.

We have examined all the errors assigned by defendant, and find none which would require and for which it would be proper to reverse the judgment appealed from. We think the judgment should be affirmed. It is affirmed.

The respondent is entitled to his costs and disbursements on appeal.

BRONSON and ROBINSON, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). In this state the form of a fire insurance policy is prescribed by statute. Section 6625, Comp. Laws 1913, provides that "no fire insurance company, corporation or association, their officers or agents, shall make, issue, use, or deliver for use any insurance policy or renewal of any fire insurance policy on property in this state other than such as shall conform in all particulars as to . . . context, provisions, agreements and conditions with the printed form of contract or policy heretofore filed in the office of the commissioner of insurance as a standard policy for this state. . . ." The insurance policy in controversy conformed to the contract so prescribed. It contained the following provisions: "This entire policy shall be void . . . if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days." The undisputed evidence in this case is to the effect that the plaintiff on September 3, 1918, leased the premises in controversy to a man named Busholl. The only occupancy of the premises by anyone subsequent to that date was by Busholl. If the premises were occupied at the time of the fire, it was by Busholl and no one else. Busholl testified that shortly after making the contract he moved on the land and took along with him some clothes, a bed, a table, a stove, and some chairs. He went to work plowing and seeding rye. He was assisted in this work by one Sagmiller. After the rye was seeded, he not only left the place, but moved out all of his belongings. A reasonable inference from the testimony is that he moved out sometime in October. The fire did not occur until December 13th. Busholl, however, testified that after he moved away he came back and slept in the house two nights,—the first night about four weeks, and the second night two days, before the fire occurred. I will let Busholl tell his own story with reference to his occupancy of the premises.

Direct Examination.

Q. Did you lose any stuff in the fire there?

A. No.

Q. Any of your stuff burn up?

A. No.

Q. Your bed?

A. No.

Q. That was out already?

A. Yes, sir.

### Cross-Examination.

Q. How many days did you sleep in the house before the two days before the fire?

A. I slept one night two days before the house burned down.

Q. When was the next time before that that you slept in the house?

A. I was there four weeks before.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

Q. You moved to Sagmiller's?

A. Yes, sir.

Q. You took your furniture and bedding over to Sagmiller's?

A. Yes, sir.

Q. Then you went over to work in a coal mine?

A. Working and digging my own coal.

Q. But after you finished plowing and sowing the rye you were there one night?

A. One night until two days before the house burned down.

Q. You had taken out all you stuff, so that you did not lose anything?

A. No.

Q. You had taken your bedding, clothes, and everything away, had you not?

A. Yes, sir.

Q. You did not lose anything in the fire?

A. No.

Q. You were not on the place except that one night at any time from the time you finished sowing the rye until that one night you testified to, two days before the fire?

A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

Q. You moved all your goods and belongings out of the house, did you not?

A. Yes, sir.

Q. You stayed away from the time you finished sowing the rye, and were there only one night between that time and the night of the fire?
A. Yes, sir.

On his redirect examination he testified that he intended to come back to the premises after he got through working at the mine; also that there was a bed, spring, and mattress and bedclothes in the house the night that he claims to have slept there two days before the fire. From this testimony, therefore, it appears that Busholl moved away from the premises when he was through seeding rye; that he also removed all of his belongings, including the stove, and had no property whatever in the house at the time the fire occurred. It also appears that after he had gone over to Sagmiller's to work in the coal mine he came back and slept in the house one night four weeks before the fire occurred, and again one night two days before the fire occurred.

The defendant called as a witness one Gertz, who lived about three quarters of a mile from the building at the time of the fire. Gertz testified that he got his mail almost daily from the mail box at the crossroads near the building; that this was so close to the building that he could, and did, see the building and premises every day during the months preceding the fire. He further testified:

"During October, November, and December, 1918, I was down to the building during all these months almost daily for my mail. I came and sometimes waited for the mailman, and if it was cold I would stand out of the wind. I could see into the rooms through the windows of the house, and I looked in it. The premises were not occupied by anybody during the months of November and December, 1918. There were no bedclothes, stoves, dishes, or anything of that character in there."

This testimony was corroborated by three of Gertz's neighbors. They all testified that during November and December they saw no lights at night, no smoke from the chimney, no stock on the premises, and in fact no evidence whatever of occupancy. The only evidence adduced by the plaintiff on the question of vacancy and nonoccupancy was the testimony of Busholl, which has already been noted. And, according to his testimony, he had moved away from the premises at least a month before the fire occurred.

The majority opinion is predicated upon the theory that the pro-

vision in the policy was one against "vacancy" alone. It will be noted, however, that the provision covers both "vacancy" and "nonoccupancy." it says: "This entire policy shall be void if a building herein described be or become *vacant or unoccupied* and so remain for ten days." "Vacant" and "unoccupied" are by no means synonymous. "Vacancy" has been said to have the signification of "uninhabited" and to be non-occupancy "for any purpose." Dohlantry v. Blue Mounds Fire & Lightning Ins. Co. 83 Wis. 181, 53 N. W. 448; Pabst Brewing Co. v. Union Ins. Co. 63 Mo. App. 663. "Occupancy" of a dwelling has been defined to be "the living in" a house. Hoover v. Mercantile Town Mut. Ins. Co. 93 Mo. App. 111, 69 S. W. 42; Stoltenberg v. Continental Ins. Co. 106 Iowa, 565, 68 Am. St. Rep. 323, 76 N. W. 835.

Cyc. says: "As in general, the term 'vacant' means empty of everything, while 'unoccupied' means that no actual use is being made of the premises, by anyone corporally present or in possession, a condition against nonoccupancy is much more easily broken than is a condition against vacancy. Historically it appears that the insurer has gradually increased the severity of such provisions. Originally the insurer relied upon an alleged implied agreement that the premises insured should remain in the same condition as when the policy was issued; then, upon the theory that a description *in praesenti* should be construed as a promissory warranty. It was next asserted that vacancy was prohibited under a clause of the policy providing that the contract should be void in case the risk was increased; then 'vacancy' was expressly prohibited in terms of various character. Next the word 'unoccupied' was linked to the term 'vacant' as denoting a state prohibited; and finally the modern and the standard policy provides that the contract of insurance shall terminate if the building insured shall 'become vacant or unoccupied.' " 19 Cyc. 729.

Cyc. further says: "A mere occasional sleeping therein is not enough to constitute of itself occupancy as a dwelling, even though it be by the owner." 19 Cyc. 731.

The court, in its instructions to the jury, said: "If you find that the tenant vacated the premises with the intention of vacating it permanently or for a period of more than ten days, and that that he thereafter acted upon his intention and did vacate, then you will find for the defendant. If, on the other hand, you find that he did not intend

to vacate the premises permanently, but that his intentions were to only absent himself temporarily and later to return, then you may find for the plaintiff in this case."

This instruction is, apparently, predicated upon the same erroneous theory as the majority opinion; *viz.,* that the provision in question covered "vacancy" alone. The instruction in effect denied to the plaintiff the benefit of the provision against "nonoccupancy." It is difficult to see where there was any room for the inference that the premises were "occupied" after Busholl left and took all his effects out of the house. But in any view of the case the defendant was at least entitled to have the question of "occupancy" submitted to the jury.

BIRDZELL, J., concurs.