Day and others, Respondents, vs. Hustisford Farmers Mutual Insurance Company, Appellant.

*January 12—February 8, 1927.*

*Insurance: Waiver of occupancy requirement by issuing policy with knowledge: Defenses: Decrease in value of insured property: Excessive mortgage: Tax liens: Prior insurance not assigned to present owner: Misrepresentation of value: Materiality: Admission of total loss: Time to bring action: Plea in abatement: Limitation of time of paying award.*

1. The fact that buildings destroyed by fire were unoccupied is no defense to an action to recover on a fire insurance policy where, with knowledge of the agent to whom the application for insurance was made, they were unoccupied when the policy was issued.   p. 162.

2. An insurance company which knew of a mortgage on the insured property at the time of the issuance of the policy, which provided for payment of loss to the mortgagee as her interest may appear, was charged with knowledge of the amount thereof and estopped to set up a provision of the policy limiting incumbrances to fifty per cent. of the value of the property.   p. 162.

3. A decrease in value of the land, increasing the ratio between such value and the amount of the incumbrance, does not offend against the ordinary provision of a fire insurance policy limiting incumbrances, such provision referring to incumbrances created by the voluntary act of the insured.   p. 163.

4. Delinquent taxes or judgments procured *in invitum* do not constitute additional incumbrances within the meaning of a provision of a policy limiting incumbrances.   p. 163.

5. Prior insurance on the property, issued to a former owner, is no defense to an action on the policy in the absence of proof that the prior policy was assigned by the insured to plaintiff or was still in force.   pp. 163, 164.

6. The evidence in this case is *held* not to show that insurance originally written on lumber and material to be used in constructing the house and which was transferred to the house when completed was secured through fraudulent representations as to the value of the material and of the house; and in the absence of misrepresentations as to the value of the building material, testimony as to the actual value of the material and of the house was properly excluded as immaterial.   p. 165.

7. The insurer, whose attorney admitted in open court that the property insured, including a silo, the stone portion of which remained after the fire, was completely destroyed, cannot take a different position on appeal from a judgment for the insured, who rested and offered no proof of damage, in reliance upon sec. 203.21, Stats., and concessions by the insurer that there was a complete loss.  p. 166.

8. Denial by an insurance company of any liability on its policy is a waiver of a provision therein fixing the time within which an action thereon shall be begun.  p. 167.

9. An action commenced on the policy within one hundred days after filing proofs of loss, contrary to the by-laws of the company, will not be sent back for a new trial even if the jury's finding, on the trial of a plea in abatement, that the company declined to pay the loss before the action was commenced, was not supported by sufficient evidence, where the case was completely and thoroughly tried and justice done.  p. 167.

10. A by-law of the insurance company requiring payment of a loss within one hundred days from the time of receiving notice of the loss, unless the company determined to resist payment on legal grounds, is not a limitation on an action on the policy, as it simply provides the time of payment of the award.  p. 168.

APPEAL from a judgment of the circuit court for Waukesha county: C. M. DAVISON, Circuit Judge.  *Affirmed.*

For the appellant there was a brief by *Kading & Kading,* and oral argument by *Harold M. Dakin,* all of Watertown.

For the respondents the cause was submitted on the brief of *J. H. Schnorenberg* of Hartford.

OWEN, J.   This is an action brought to recover upon a fire insurance policy issued by the appellant company to one Fred Day.   A coverage of $1,200 was placed on "frame and log barn and shed and silo."   This property burned on the 1st day of April, 1925.   On the 2d day of April Fred Day conveyed the farm upon which these buildings were located to the plaintiffs and assigned to them his cause of action under the insurance policy for the fire loss sustained on April 1st.   The company interposed numerous defenses.   The court directed a verdict in favor of the plaintiffs.

Appellant's first contention is that the policy was void because at the time of the fire the buildings destroyed were unoccupied. The answer to this contention is that they were unoccupied at the time of the issuance of the policy, which fact was known to the agent to whom application for insurance was made. Notwithstanding this fact the company issued the policy. In *Welch v. Fire Asso.* 120 Wis. 456, 461, 98 N. W. 227, it was said that an insurance company receiving a premium and delivering a policy with knowledge of the existence of facts rendering the policy void by reason of some stipulation in the policy or application to that effect is estopped from thereafter insisting upon such stipulation. In *Alkan v. New Hampshire Ins. Co.* 53 Wis. 136, 10 N. W. 91, it was expressly held that the knowledge of the agent of an insurance company that buildings upon which fire insurance was solicited were vacant and unoccupied was the knowledge of the company, and that the issuance of a policy upon the vacant and unoccupied buildings operated as a waiver upon the part of the company of a provision of the policy that the policy would become void if the premises became unoccupied. This defense, therefore, cannot be sustained.

It is further contended that the policy became void because the premises became incumbered, and at the time of the fire were incumbered for more than fifty per cent. of their value, contrary to a provision of the policy. The only incumbrance on the premises at the time of the fire, except perhaps delinquent taxes, was in existence at the time of the issuance of the policy. It consisted of a mortgage owned by Lucy Jenn. The policy itself specifically provides that the loss shall be payable to Lucy Jenn as her interest may appear. The company knew of this mortgage and is chargeable with knowledge of the amount thereof. The amount of the face of the mortgage was $8,000. In a questionnaire supposed to have been signed by the applicant the value of the land was fixed at $15,000. The company, therefore, had notice that the

amount of this mortgage was more than fifty per cent. of the value of the farm at the time it issued the policy. For the reason above stated the company is estopped from setting up as a defense the provision of the policy limiting the amount of the incumbrances to fifty per cent. of the value of the property.

The company attempted to show that subsequent to the issuance of the policy the land had greatly depreciated in value and that the ratio between the amount of the incumbrance and the value of the land had thereby greatly increased. The fact remains, however, that the company issued this policy knowing that this mortgage was an incumbrance upon the farm, and the idea that a decrease in the value of the land so as to increase the ratio between the amount of the incumbrance and the value of the land offends against the ordinary provision of an insurance policy limiting incumbrances is indeed a novel one. It is well settled that such provisions refer to incumbrances created by the voluntary act of the insured. The term "incumbrances" as used in this connection in insurance policies does not include involuntary incumbrances, such as tax liens and judgments procured *in invitum*. *Hosford v. Hartford Fire Ins. Co.* 127 U. S. 404, 8 Sup. Ct. 1202; *Baley v. Homestead Fire Ins. Co.* 80 N. Y. 21; *Georgia Home Ins. Co. v. Schild*, 73 Miss. 128, 19 South. 94; May, Ins. § 292 A; 14 Ruling Case Law, 1130. These authorities also dispose of the contention that delinquent taxes constitute additional incumbrances within the meaning of the policy.

The company also claimed that there was prior insurance on the property. The only proof with reference to this matter was that the Herman Fire Insurance Company had issued a policy on the same property in 1918 to the former owner thereof. There was no proof that the policy had been assigned by the then owner of the premises to the applicant for the present insurance or that it was continuing and in force. If the property had been conveyed without an assignment of

that insurance policy it was a void policy and constituted no insurance of the property in the hands of the present owner.

In addition to the coverage of $1,200 on "frame and log barn and shed and silo" the policy insured "lumber and material for house" in the sum of $2,000. It appears that at the time the application for insurance was made the owner had materials on the ground for the purpose of building a house. These materials were originally insured in the sum of $2,000. Thereafter when the house was completed the insurance on this building material was transferred to the house and additional insurance of $2,000 placed on the house. Although the house did not burn, the company, on the theory that the policy was indivisible, which we assume, sought to show that the amount of insurance secured on the lumber and later on the house was secured through fraudulent misrepresentations concerning the value both of the material and the house. It should be here stated that the application for insurance was not signed by the applicant at all. It appears that the owner of the premises casually met the agent of the company and told him he wanted some insurance on the premises, and after some talk the agent repaired to his office, made out the application himself, filled in what he deemed proper answers to the questionnaire contained in the application, and signed the application "Fred Day, applicant. By Moser." It is undisputed that Day, the applicant and owner, never saw this application. On the back of this application Moser certified that he had made a personal examination of the property and that he considered the estimated value of the buildings as contained in the application correct. He further certified that the house was to be built. The testimony of the agent as to the conversation between him and the owner with reference to insurance on the material on the ground for the construction of the house is as follows:

"Q. Was there any talk between you and him at the time as to how much should be put on the building, or on the ma-

terial for a residence?. *A*. Well, I put $2,000, I believe, on
material for a building.

"*Q*. Was there talk that it was material instead of a resi-
dence? *A*. Yes. He was going to put up another building
there, or a bungalow, something like that.

"*Q*. What was said as to the amount of insurance he
wanted on that? *A*. Well, he wanted the insurance on the
material.

"*Q*. How much? *A*. $3,000, I guess.

"*Q*. And you prepared the application accordingly?
*A*. Yes.

"*Q*. Was there any further talk between you and Mr. Day
along in December of 1922? *A*. In December he wanted
some additional insurance on it.

"*Q*. On what? *A*. On the bungalow.

"*Q*. How much? *A*. Or whatever you call it.

"*Q*. How much? *A*. I guess he wanted some $2,000,
$2,100."

That is all the testimony concerning the misrepresentation
of the value of the material or of the dwelling after it was
constructed. We discover in this testimony no representa-
tion whatever concerning either the value of the material or
the value of the dwelling. According to this testimony the
applicant simply said he wanted $3,000 insurance on the ma-
terial and later on $2,000 additional on the house. There
was nothing said about the value of the material or the house.
The agent himself certified that he made a personal investi-
gation of the premises before the application for insurance
was sent to the company. In the absence of such a represen-
tation, testimony concerning the actual value of the material
or of the house after it was constructed was utterly imma-
terial, and the court properly excluded such evidence.

A further question is whether the plaintiffs in this action
were entitled to recover as and for a total loss on the "frame
and log barn and shed," which was covered as one item in
the sum of $1,200. The evidence showed that the barn and
shed were completely destroyed. It further appeared, how-

ever, that the silo was constructed of stone to the height of twenty-eight feet, and that this stone structure remained after the fire, although everything inflammable in and about the silo was consumed.  The plaintiffs contended that this amounted to a total loss and that they were entitled to recover $1,200 under the provisions of sec. 203.21, Stats., which provides that the amount of the insurance shall be taken conclusively to be the true value of the real property in case of total loss.  Whether the silo may be said to have been a total loss would be an interesting question if it were necessary to be considered.  Such consideration, however, becomes unnecessary because of concessions made by the attorneys for the company in open court to the effect that there was a complete loss of all the buildings.  The proceedings to which we refer were as follows: A witness was asked this question:

"*Q.* What was destroyed by that fire?  *A.* Oh, the barn, there was a log barn there, and the silo roof and some more sheds.

"*Q.* Were they completely destroyed?  *A.* Yes, sir.

"By Mr. Schnorenberg: That is all.

"By Mr. Kading: That is all.

"By the Court: You are satisfied that there was a fire there April 1st, and that it destroyed the shed and barn and the silo?

"By Mr. Kading: And the silo, yes.

"By Mr. Schnorenberg: There is no dispute about that.

"By Mr. Kading: No.

"By the Court: They admit that.

"By Mr. Kading: Yes.

"By Mr. Schnorenberg: That is all.

"By Mr. Lueck: We rest, your Honor."

We cannot but regard this as an unequivocal admission in open court by the attorneys for the company that the property involved was completely destroyed by fire.  Immediately after that concession the plaintiffs rested and did not offer proof concerning the damage resulting from the fire, relying upon this concession made in open court and on the provi-

sions of sec. 203.21, which provides that the amount of the insurance shall be taken conclusively to be the true value of real property in case of total loss. Having placed the plaintiffs in this position, the defendant cannot be heard now on this appeal to take a different position.

We believe that we have thus dealt with all of the substantial defenses relied upon by the company, with the result that we find nothing constituting a jury issue, and there was no error committed by the court in directing a verdict in favor of the plaintiffs.

There remain to be considered, however, questions presented by a plea in abatement which was interposed by the defendant company at the time of trial. The by-laws of the company provide that "the amount awarded to persons sustaining the loss shall be paid as soon as practicable, and in no case to exceed one hundred days from the time of receiving the notice of the loss, except the company shall determine to resist the payment of such loss on legal grounds, in which case the directors shall give notice in writing of such determination with their reasons therefor to the member claiming such loss within fifteen days after receiving notice of the same." The plea in abatement was founded on the fact that this action was commenced within one hundred days after the filing of the proofs of loss. The plaintiffs contended that it was not brought until after the defendant declined to pay the loss, and that after such declination plaintiffs were no longer bound by any limitation contained in the policy with reference to an action to recover.

It is well settled that denial by an insurance company of any liability on its policy is a waiver of a provision in its policy fixing the time within which actions shall be begun. *French v. Fidelity & Cas. Co.* 135 Wis. 259, 115 N. W. 869. The plea in abatement was tried and the jury found that the company did decline to pay the loss before the action was commenced. Appellant here contends that that finding is not supported by the evidence. We hold that there is sufficient

evidence to support the finding, but we are not disposed to give that matter very critical examination, for at least two reasons: In the first place, even though we should conclude that such finding was not supported by the evidence, we would not be inclined to send this case back for a new trial for that reason. This case has been completely and thoroughly tried. In our opinion, justice has been done. We do not reverse judgments because of technical errors. For this reason we are not giving very serious consideration to the question of whether the jury found correctly on the plea in abatement. Then there is another reason. The by-law of the company above quoted does not constitute a limitation upon an action brought on the policy. It simply provides that the award made to the person sustaining the loss shall be paid within one hundred days. In this case there was no award. The company refused to recognize any liability and refused to appoint any committee to ascertain the amount of the loss as required by sec. 9 of the by-laws of the company. The plea in abatement should not have been allowed or tried, as there appears to be no provision in the policy limiting the time when an action may be brought on the policy where the company fails to take the necessary action to ascertain the amount of the loss as prescribed by its by-laws.

*By the Court.*—Judgment affirmed.