RITA NAIMAN, Respondent, *v.* NIAGARA FIRE INSURANCE COMPANY, Appellant.

First Department, May 10, 1955.

*William S. Evans* of counsel (*Edward J. Greenfield* and *Harold Glatzer* with him on the brief; *Glatzer, Glatzer & Diamond,* attorneys), for appellant.

*Milton Winn* of counsel (*David M. Potts* and *Lawrence S. Timen* with him on the brief; *Kadel, Wilson & Potts,* attorneys), for respondent.

BOTEIN, J. Plaintiff insured her jewelry and furs with defendant insurance company against all risks of loss or damage, with certain specified exceptions irrelevant to the issues in this case. The policy states that defendant insured plaintiff " for the sum of Fifty One Thousand Six Hundred and Fifty Dollars; * * * as per schedule attached or as scheduled below ". Attached to the policy is a schedule listing and describing seventeen items of jewelry and six items of fur, and allocating a specified amount of the aggregate insurance for each article. Before insuring these articles defendant required plaintiff to furnish it with written appraisals of value for each item.

Upon the trial of this case the jury found that, under circumstances covered by the policy, articles of jewelry insured for the total amount of $40,500 had been stolen from plaintiff. The Trial Justice charged, as a matter of law, that the policy was a " valued " policy; and that " the amount recoverable is the amount stated in the policy, without regard to the actual value of that item at the time of the loss ". He had held throughout the trial that no proof of the value of plaintiff's property was required, since the valuation agreed upon in the policy was binding upon the parties, and therefore any evidence as to actual value became immaterial. The Trial Justice also denied

defendant's request to charge that the verdict must be limited to the market value of the property at the time of loss. The jury returned a verdict of $40,500 — the full amount of the insurance coverage for the items allegedly lost.

The controlling issue in the case is whether defendant issued a valued policy; and all other points raised by the parties become subsidiary to this question.

A valued policy is one in which the parties have agreed upon the value of the property insured in the event of future loss (1 Richards on Insurance [5th ed.], § 21). '' In such a case, where the *bona fides* of the transaction is not assailed and neither fraud, nor mistake, is charged, the valuation is conclusive upon the parties, as the amount which the assured is entitled to receive upon the happening of the condition of the policy '' (*Michael* v. *Prussian Nat. Ins. Co.*, 171 N. Y. 25, 33).

Policies like the one in this case, insuring against hazards to property, are agreements of indemnification. They are designed to compensate an assured for the actual property loss he has sustained. In the more familiar form of coverage — the so-called '' open '' policy as distinguished from the valued policy — the amount of insurance set forth in the policy is only a statement of the limits of coverage. Up to but not exceeding these limits the insurer will pay the actual value of the property loss — an uncertain amount at the time the policy is underwritten. Therefore, the limits of coverage of an open policy are no evidence of the extent of the loss or the value of the property lost.

There can be no objection to predetermining the amount of the possible loss on some basis reasonably calculated to fix the fair value of the insured property. Conceivably, to fix value beforehand may often be a truer method than to explore value after the event insured against has caused the loss or destruction of the property to be evaluated. And many assureds and insurers are genuinely moved to work out some basis for the avoidance of unpalatable haggling and burdensome negotiation or litigation about value in event of loss. Of course, a valued policy may not disguise a wagering contract or be used as a vehicle for fraud.

Ordinarily the amount of insurance set forth in the policy is the measure of coverage rather than of damages. '' [T]he mere statement of the amount of insurance does not create a valued policy '' (*St. Paul Fire & Mar. Ins. Co.* v. *Pure Oil Co.*, 63 F. 2d 771, 772). In the leading case of *Lee* v. *Hamilton Fire Ins. Co.* (251 N. Y. 230, 234) the Court of Appeals set great store by the necessity for inclusion of precise words of valuation

in the policy: "A valued policy is one in which the words 'valued at' appear and the amount at which the property insured is 'valued at' definitely fixes the liability of the insurer and is conclusive on the parties." And in *Snowden* v. *Guion* (101 N. Y. 458, 466–467) the court said: "If this was a valued policy it became so by containing in its terms an agreement of insurer and insured, fixing absolutely for the purposes of the contract the value of the subject insured at the amount insured. * * * We should naturally look for an agreed valuation in definite language". (See, also, *Peninsular & O. S. S. Co.* v. *Atlantic Mut. Ins. Co.,* 185 F. 172; *J. Aron & Co.* v. *United States Lloyds,* 275 F. 442, and *Borden* v. *General Ins. Co.,* 157 Neb. 98; cf. *Gerhard* v. *Boston Ins. Co.,* 99 F. Supp. 247.)

The operative words of coverage in this policy are that defendant "Does insure" plaintiff "against * * *. loss or damage" "for the sum of". These words, no matter how liberally construed, do not peg the amount of any future loss but merely set boundaries on defendant's liability. They insure in the actual amount of the loss or damage suffered by plaintiff, to be determined after the happening of the event against which she was insured. Nor does examination of the attached schedule reveal anything more than an extension of such coverage, in specific allocated amounts, to the articles listed and described in the schedule. The amounts marked opposite each article are found under the heading "Amount of Insurance"; no suggestion of a fixation of value may be found on the face of the policy or the annexed indorsements.

Plaintiff contends that an agreement to fix value before loss may be spelled out of the fact that defendant required her to submit an appraisal of each article before insuring it and that the amounts of insurance allocated to the items on the schedule correspond in each instance to the appraised values. In accepting risks of this nature an insurance company may require an appraisal for too many good and prudent reasons to permit that circumstance to override the clear and well-grooved meaning of the language employed in the policy.

It must be borne in mind that each of the twenty-three items is insured separately, for a stated, specific amount — just as though twenty-three small policies of insurance had been issued in various amounts. Appraisals by a reputable expert gave some assurance to defendant that the articles insured were in existence, helped identify them by expert description and afforded some confirmation that the values of the articles bore a reasonable ratio to the amounts for which they were insured.

Since blanket risk policies of this nature are peculiarly vulnerable to fraudulent claims, the information procured from reliable appraisals becomes a potent protective measure. Such information also tends to establish the reasonableness of the premium collected by defendant, because premiums are charged on a basis of loss exposure.

Nor can plaintiff be heard to complain that she was misled by the policy language. Of course, words in an insurance contract are to be understood in their plain, ordinary and popular sense (*Auerbach* v. *Maryland Cas. Co.*, 236 N. Y. 247, 252; *Kenyon* v. *Knights Templar & Masonic Mut. Aid Assn.*, 122 N. Y. 247, 254; *Lachs* v. *Fidelity & Cas. Co. of N. Y.*, 306 N. Y. 357, 364). But the clear meaning of these unambiguous and unequivocal policy provisions is that plaintiff's recovery is limited to the actual amount of loss or damage. And a sensible consideration of other aspects of the policy by a layman would lead to the same conclusion.

For example, the policy was written for a three-year term. Six items of fur were covered in a total amount of $12,500. Surely plaintiff did not believe that the insurance company had agreed to pay a fixed and immutable amount over a period of three years for such fast-depreciating articles as expensive furs.

We are therefore of the opinion that the policy in question is not a valued one. In view of this holding the appraisals, in and of themselves, do not constitute competent evidence of the value or existence of the insured property and should not be received for such purpose upon a new trial.

The judgment in favor of plaintiff should be reversed and a new trial ordered.

CALLAHAN, J. P., BREITEL, BASTOW and RABIN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.