McMAHON BROTHERS REALTY COM-
PANY, a corporation of the State of
Delaware, Plaintiff,

v.

UNITED STATES FIDELITY & GUAR-
ANTY COMPANY, a corporation of the
State of Maryland, Defendant.

Civ. A. No. 2162.

United States District Court
D. Delaware.

May 28, 1963.

Richard L. McMahon, Wilmington, Del., for plaintiff.

William Prickett, Sr. (Prickett, Prickett & Tybout), Wilmington, Del., for defendant.

STEEL, District Judge.

Plaintiff, the insured under a fire insurance policy, alleging that the insured buildings were totally destroyed by fire, sued the defendant insurer for $30,000, the face amount of the policy, which was 80% of the "agreed upon" value of $37,-500 ascribed to the insured buildings. The case is at issue. One of the defenses alleged is misrepresentation of the value of the property by plaintiff, who, as agent for the defendant, procured the issuance of the policy by it.

■ Three matters are for decision: (1) the motion of plaintiff to strike the defense of misrepresentation; (2) the objection of plaintiff to a demand by defendant to admit facts supporting the misrepresentation defense; and (3) the motion of plaintiff for summary judgment. Basic to each is the claim of plaintiff that the misrepresentation defense is inadequate in point of law because of the Delaware "agreed upon value" statute, 18 Del.C. § 1102, and the "agreed upon value" endorsement of the policy thereunder. Jurisdiction rests upon diversity of citizenship. The insurance contract was made in Delaware, and covers Delaware realty. Whether the statute and policy legend bars the misrepresentation defense depends upon Delaware law. Section 1102 reads:

"(a) Whenever any policy of insurance shall be issued to insure any real property in this State against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed without criminal fault on the part of the insured, or his assigns, the amount of the insurance stated in such policy (except policies with blanket coverage provided for in section 1103 of this title) shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages, subject to the proviso in subsection (b) of this section.

"(b) Every such policy, whether hereafter issued or renewed, shall have endorsed across the face of it the following: 'It is agreed between insurer and insured that the value of the real property insured is the sum of $_____'.

"(c) The amount of the agreed value stated in the endorsement shall be binding on both parties as to value;  *  *  *."

The policy bore the following endorsement:

"AS TO BUILDERS ONLY—It is agreed between the insurer and the insured that the value of the insured property is of the sum $37,500.00."

■ Although the pleadings are not verified, there are of record affidavits, admissions, answers to interrogatories and a deposition which set forth numerous pertinent facts. These must be considered in the light most favorable to defendant in ruling upon plaintiff's motion for summary judgment. So considered, they are sufficient to support the following findings: On November 1, 1958, the issuance date of the policy, the buildings insured were virtually worthless. This fact was known to plaintiff. At the time, and for some years prior thereto, the plaintiff had been acting as agent for the defendant and had insured numerous properties with it. As defendant's agent, plaintiff had authority to establish or to accept agreed upon valuations for properties and to write fire and extended coverage containing agreed upon value endorsements. The plaintiff furnished the defendant with the data upon the basis of which the policy was written, including the agreed upon valuation for the buildings and the policy limitation. In

issuing the policy the defendant relied upon plaintiff's representation as to the value of the buildings. If these facts are true—and at this juncture they must be assumed to be—plaintiff obtained the policy by fraud.[1]

Whether fraud, in the context of the instant case, can be asserted in defense of a claim upon a policy containing an agreed upon valuation under the Valued Policy statute of Delaware, where the fire loss was complete, as plaintiff alleges, is the question for decision.[2]

■ In the usual case fire insurance is written directly by the insurer or its agent who has no interest in the insured property. In that situation, when the insurer has failed to make an examination of the property which would have revealed its true value, the insured can recover the agreed upon value upon the occurrence of a complete loss despite the fact that the insured obtained the policy by misrepresenting the value of the property. U. S. Fire Ins. Co. of City of New York v. Sullivan, 25 F.2d 40 (8th Cir. 1928); cert. den. 278 U.S. 608, 49 S.Ct. 12, 73 L.Ed. 534 (1928). The same rule has been applied under Valued Policy statutes which obligate the insurer to pay the value fixed in the policy only "in the absence * * * of intentional fraud" by the insured. Queen Ins. Co. v. Leslie, 47 Ohio St. 409, 24 N.E. 1072, 9 L.R.A. 45 (1890); Nathan v. St. Paul Mut. Ins. Co., 243 Minn. 430, 68 N.W.2d 385 (1955). The Ohio and the Minnesota statutes considered in the Leslie and Nathan cases expressly required the insurer to examine the property before fixing its value. Although the Nebraska statute, like the Delaware statute, contained no express provision for inspection, it was nevertheless held in Sullivan that a duty to inspect was implicit in the statute.

■ Each of these decisions is based upon the view that the insurer could have protected itself against deception by performing its statutory duty to inspect the premises, and since it failed to do this, any excessive valuation resulting from misrepresentations by the insured is immaterial. These cases are understandable. Any other rule would permit insurance companies to over-value property, to collect premiums based on the excessive valuation, and to contest the values, and hence their liability, whenever losses occur. To prevent over insurance was the primary purpose of the Delaware statute. American Ins. Co. v. Iaconi, 8 Terry 167, 89 A.2d 141, 145–146, 36 A.L.R.2d 604 (Del.1952). See also, as to purpose of Nebraska statute, U. S. Fire Ins. Co. v. Sullivan, supra, 25 F.2d p. 41.

It may be assumed that the Delaware statute, like the Nebraska statute, implicitly imposes a duty upon an insurer to examine property before issuing a policy containing an agreed upon value clause. But here, plaintiff, the agent of defendant, was sufficiently familiar with the property to fairly appraise it. The problem arises because the agent, acting in his own interest, knowingly over-valued the property. Whether in these circumstances, a valued policy statute authorizes an insured to recover the value fixed in the policy, has not been discussed in any case cited by the parties or discovered by independent research.

■ It can be argued that the defendant, knowing of the interest of its agent, could have avoided its present plight by designating an independent agent to inspect the property. Of course

<hr/>

1. Although the answer does not plead fraud or a *deliberate* misrepresentation by plaintiff, further delay in the decision until after an amendment to the answer is not warranted. Since the facts viewed most favorably to defendant will support the defense of fraud, the answer should be promptly amended to assert it to com- ply with the particularity requirement of F.R.Civ.P. 9(b). The pending matters will be considered as if the answer were so amended.

2. Whether there is a genuine issue of fact as to the completeness of the loss need not be determined in view of the disposition which is made of the fraud question.

this is so. But whether defendant was under a duty to do this is a different matter. A conclusion that it had such a duty must rest upon the premise that when an insurer knows that its agent is procuring insurance upon its own property, the insurer must treat the agent as suspect and proceed at its peril in accepting its valuation. This view would be justified only if a well settled tenet of the law were ignored. Subject to certain exceptions not pertinent, an agent must disclose to his principal all known facts which might reasonably affect the principal's judgment, whenever the agent, with the knowledge of his principal, acts on his own account in a transaction in which he is employed. Restatement-Agency 2d § 390. This doctrine was applied in Westchester Fire Ins. Co. of New York v. Fitzpatrick, 2 F.2d 651 (3d Cir. 1924) in an action by an insured against his insurer for a fire loss based upon a policy which the insured, as agent of the insurer, had caused to be issued on his own property. One of the defenses was that the insured-agent had misrepresented to the insurer the value of the insured property. In reversing the lower court's judgment for the insured and directing a new trial, the Court of Appeals stated that an agent must act in good faith toward his principal when insurance is placed upon the property of a third person and do nothing to militate against the interest of the principal. The Court added (pp. 654–655):

> "But when applying to his principal for insurance upon his own property, the agent is in a position of higher responsibility, for then he has full and sometimes exclusive knowledge of the situation and knows every risk involved. He is therefore bound at all times to the utmost good faith in his disclosures. To withhold knowledge of any material fact in such case becomes a fraud on the principal, sufficient to void the policy."

The critical question is whether it was the purpose of the Delaware Valued Policy statute to obviate the duty which, but for the statute, an insurance agent would owe to the insurer when the agent placed insurance on his own property, and to require the insurer to act at his peril in relying upon the valuation of such an agent. Neither the language of the statute nor its history points to any such legislative intention.[3]

The duty imposed upon an insurer by a Valued Policy statute to make its own determination of value before agreeing upon the value of the property or to suffer the consequences of its failure to do so, necessarily presupposes that its attempt to fix a true value will not be wrongfully prevented by the insured. If a prospective insured should bribe an insurance agent to overvalue the property, the statute would not bar the insurer from asserting the defense. The statute was not designed to facilitate recovery by an insured who by chicanery or dishonest conduct prevented an insurer from ascertaining the true value of property.

In the case at bar the agent, like the supposititious agent who had been bribed, failed to perform its duty honestly because of a personal interest adverse to the performance of that duty. In each case, proper performance of its duty qua agent was prevented by its personal interest adverse to its principal. Deviation by plaintiff from its normal fiduciary responsibility is no less culpable and no more subject to the protection of the Valued Policy statute than the delinquency of the hypothetical agent who had been bribed.

The principle that an agent must be loyal to and deal fairly with his principal in acting in matters in which the agent has a personal interest is so deeply rooted in all phases of the principal-agency relationship, that no legislative intention to destroy or weaken the prin-

---

**3.** The first agreed upon policy statute in Delaware is found in 18 Del.Laws., Ch. 695, § 1 (1889). Thereafter, from time to time, the statute has been amended. This legislative development is detailed in American Ins. Co. v. Iaconi, supra.

ciple, even in the limited area of law pertaining to valued fire insurance policies, should be presumed without a clearer manifestation of legislative purpose than is here apparent.

When the facts of record are viewed in the light most favorable to the defendant, an adequate basis exists for a finding that the plaintiff, as agent for the defendant, violated the fiduciary duty which it owed to the defendant when it placed a value on the insured property completely out of keeping with its true worth, and that in so doing it perpetrated a fraud upon the defendant which will defeat plaintiff's claim for the face amount of the policy.

Plaintiff makes the further argument that the defendant cannot now be heard to assert its fraud defense because it has waived its right to do so or is barred under principles of estoppel or laches. The facts supporting the defense, plaintiff asserts, were known to the defendant prior to the time when it took action consistent with the validity of the policy. Plaintiff points out that (1) for some years prior to 1952 fire policies on the property had been written by defendant in plaintiff's favor through an independent agent for varying amounts up to $20,000, and (2) defendant inspected the premises shortly after the fire on February 7, 1959. Both of these circumstances were sufficient, plaintiff argues, to have apprised defendant of the fact that, as defendant now claims, the value of the property when the policy in suit was issued was substantially less than that agreed upon, largely because of discernible unrepaired damage resulting from an earlier fire in 1942. With knowledge allegedly thus acquired, defendant (a) continued the policy in effect until August 1959 when it cancelled the policy and remitted to plaintiff only the unearned portion of the premium applicable to the period following cancellation, (b) made an offer of settlement at the end of 1959 for an amount which defendant said was the actual damage, and (c) filed an answer in April 1960 which omitted any reference to the misrepresentation defense. With the possible exception of the settlement offer, these actions were inconsistent with the defense alleged for the first time in the amended answer filed in April 1961, that the policy was void for misrepresentation.

Defendant asserts that many of the facts alleged in its amended answer upon which the fraud defense is based were not discovered until defendant examined the plaintiff's books in November 1960 and plaintiff's counsel made certain disclosures to counsel for defendant in October 1960. There is verified evidence in the record to support these assertions. Other facts which were discovered by defendant for the first time in the fall of 1960, although not alleged in the amended answer, also support the defense and tend to justify its assertion.

Without going into detail there are enough facts of record which, if accepted as true, as they must be at this stage of the case, would defeat any claim by plaintiff that defendant had waived or was barred by laches or estoppel for asserting its defense of fraud. Factual issues exist relating to the issues of waiver, laches, and estoppel which can only be resolved after trial.

Plaintiff's motion for summary judgment, its motion to strike the allegations of the amended answer, and its objections to defendant's demand to admit, are overruled.