Dean R. ZURAFF, Plaintiff
and Appellee,

v.

EMPIRE FIRE AND MARINE
INSURANCE COMPANY,
Defendant and Appellant.

Civ. No. 9276.

Supreme Court of North Dakota.

April 1, 1977.

As Amended April 5, 1977.

Rehearing Denied April 25, 1977.

Mackoff, Kellogg, Kirby & Kloster, P. C., Dickinson, for defendant and appellant; argued by Ward M. Kirby, Dickinson.

William R. Mills, Bismarck, for plaintiff and appellee.

SAND, Justice.

Empire Fire and Marine Insurance Company appealed from a summary judgment entered in favor of the insured, Dean Zuraff, for the sum of $60,000.00 on a fire insurance claim for certain real property. Claims for insurance on personal property and for loss of business and punitive damages were continued for trial.

In early February of 1975, Zuraff purchased a tavern in Medora known as the Cave Bar. On 26 February 1975 an insurance policy was issued to him by the defendant Empire Fire and Marine Insurance Company (hereinafter insurer) which included coverage for fire loss on the building of $60,000 and fire loss of personal property contained in the building of $20,000. The purchase contract for the property entered into by Zuraff was claimed to be for the amount of $50,000, with an agreement to provide adequate insurance for the premises included as a condition of sale. On 26 March 1975 the building and personal property were destroyed by fire. Some time thereafter investigations were conducted by the insurer, the State Fire Marshal, and the State Electrical Board.

No payment was made by the insurer to Zuraff after several demands were made, and Zuraff commenced an action against the insurer to recover for the fire loss, loss of business, and punitive damages for oppressive conduct and refusal to pay. The insurer's Answer contained an allegation that Zuraff obtained insurance coverage through fraud and misrepresentation concerning the value of the building and personal property to be insured, and the insurer raised as an affirmative defense the allegation that the policy was null and void by reason of Zuraff's fraud and misrepresentation and that Zuraff knew at the time the insurance was obtained that the building was worth only $15,000, rather than $60,-000.

The second affirmative defense raised was that Zuraff did not have a full interest in the property and could not, at any rate, recover more than the amount of his inter-

est. The insurer also counterclaimed for dismissal of Zuraff's complaint and cancellation of the insurance policy based on fraud and misrepresentation or mutual mistake.

On 2 June 1976 Zuraff moved for a summary judgment in the district court of Burleigh County under Rule 56, North Dakota Rules of Civil Procedure, on that portion of the claim relating to insurance on the real property. The matter was submitted to the court on briefs by both parties, and summary judgment in Zuraff's favor was granted in the amount of $60,000. Judgment was entered, although the issues of personal property loss, business loss, and punitive damages remained for trial. Zuraff sought and obtained a writ of execution and attempted to levy upon the insurer's property. The insurer then took this appeal, raising the sole issue whether or not judgment on a portion of the issues was properly granted. We hold that it was not, and therefore reverse and remand to the district court for trial on all issues.

A question was raised initially regarding the appealability of the order. Summary judgment on a portion of the issues is provided for in Rule 56(d), NDRCivP, which reads:

"If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

■ This Rule, however, does not determine what constitutes finality for purposes of appeal, and when partial adjudication is made under the Rule it is not appealable unless otherwise so provided by statute. 6 Moore's Federal Practice, Part 2, (2d ed.) ¶ 56.20 [3.1] [3.3]. Because this case involves more than one claim and includes a counterclaim, reference was also made to Rule 54(b), NDRCivP. That rule says:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The parties do not dispute that neither the express determination nor the express direction required by the Rule were made by the trial court, although the judgment was apparently treated as final as evidenced by the issuance of a writ of execution to Zuraff. However, after oral argument to this court stipulation was entered into by both parties through their counsel that any noncompliance with Rule 54(b) be waived and that this court reach the merits of the appeal regarding propriety of summary judgment. We need not, therefore, determine the issue of appealability and by stipulation of the parties we proceed to the merits of the appeal.

The principal contention by Zuraff is that North Dakota law on fire insurance for real property requires payment of the face value

of the policy in case of total loss by fire, and that the insurer cannot contest or refuse payment after the loss by claiming that the property was overvalued at the time the policy was issued. The summary judgment was granted on this basis. Although that general principle is correct, the pertinent statute contains an exception based on fraud, which, according to the pleading, needs to be considered in the circumstances of this case. The statute under consideration is § 26–18–08, North Dakota Century Code, known as the Valued Policy Act, which reads:

"Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire and the insured property shall be destroyed by fire without fraud on the part of the insured or his assigns, the stated amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured."

A "valued policy" is further defined in § 26–03–03(2), NDCC as follows:

"2. A valued policy is one which expresses on its face an agreement that the thing insured shall be valued at a specified sum; . . ."

■ The Valued Policy Act, § 26–18–08, NDCC gives to fire insurance policies, to the extent they apply to real property, the effect of a valued policy. Total loss of the real property results in full payment of the face value of the property without further evidence of actual loss. This provision becomes a part of every fire insurance contract entered into in the State covering real property, the same as if it were expressly incorporated into the policy. Any policy provisions conflicting with it are void since the benefits of the statute cannot be waived. 15 Couch on Insurance Second, § 54.111; 45 C.J.S. *Insurance* § 916.

Many states have similar provisions and such valued policy laws are founded on sound public policy. Their dual purpose is (1) to relieve the insured from the burden of proving the value of his property after its total destruction, and (2) to prevent overinsurance by discouraging insurance companies from collecting premiums on overvalued property, but then contesting value, and hence liability, when it becomes to their advantage to do so. *See, Hight v. Maryland Insurance Co.*, 69 S.D. 320, 10 N.W.2d 285 (1943); *McMahon Bros. Realty Co. v. United States Fidelity & Guaranty Co.*, 217 F.Supp. 567 (D.Del.1963). Some measure of protection is thus given to the insured, and in addition; fixing a conclusive value beforehand may be a truer method of assessing damages than exploring the value after complete destruction of the premises.

■ A valued policy may not, however, be used as a vehicle for fraud. In fact, our statute applies only when "the insured property shall be destroyed by fire without fraud on the part of the insured or his assigns." Counsel for the insured argued that this exception refers only to fraudulent destruction of the premises, conduct which was not alleged in this case. The fraud alleged was overvaluation for purposes of obtaining the policy coverage. We find this interpretation of the statute too narrow and hold that fraudulent conduct in procuring the insurance is fully available as a defense to the insurer.

The cases interpreting § 26–18–08, NDCC, appear to support this construction. In *Jakober v. Commercial Union Assurance Co.*, 49 N.D. 270, 191 N.W. 480 (1922), the principal defense urged in an action for recovery on a fire insurance policy was that the insured had allegedly made false statements in his application regarding the value of the structure to be insured. The issue was submitted to the jury in the form for a special verdict. The jury found that the insured did not sign the application with the intent to misrepresent the facts nor deceive the insurance company. After quoting the pertinent statute, § 6624, C.L. 1913 [now § 26–18–08, NDCC], the court said:

"It is not claimed nor contended here that the building was destroyed by any fraud on the part of the plaintiff. The jury determined that he made no false statements or representations in the application, hence, under the terms of the

above section, the plaintiff was entitled to recover . . . the stated amount of the insurance written in the policy. The loss was total, hence the language of the section became applicable."

We must assume that the court, as a matter of law, submitted the special verdict form to the jury.

In *Horswill v. North Dakota Mutual Fire Insurance Co.*, 45 N.D. 600, 178 N.W. 798, 800 (1920), where failure to make proof of loss after a fire was alleged, this court held that under the statute it is unnecessary in the event of total loss to produce any evidence of the value of the building insured.

"The value thereof in such case is determined by the amount written in the policy, and, except for fraud, that amount is conclusive. The defendant could have ascertained the value before issuing its policy. If it did not do so, it should have. As it has failed to do so and there is no fraud, it is bound by the amount for which the buildings are insured."

The rule that fraud in any material part of the transaction is fully available as a defense is consistently adhered to in other jurisdictions and it does no more than restate the law of fraud as to insurance contracts in general. 15 Couch on Insurance Second, § 54.115, states:

"The valued policy law goes no further than to bind the insurer with respect to damages payable. It does not bar the insurer from setting up any other defense which it could otherwise raise in an action on the policy. Hence valued policy statutes do not prevent the insurer from setting up the fraudulent conduct on the insured in procuring the insurance."

Other jurisdictions considering the application of valued policies have reached a similar conclusion. In *Nathan v. St. Paul Mutual Insurance Co.*, 243 Minn. 430, 68 N.W.2d 385 (1955), under Minnesota statute (MSA § 65.05), the court stated that the basic principle of the valued policy is that the parties agree in advance on a valuation of the property, and *in the absence of fraud* this valuation is binding and not subject to judicial inquiry.[1] The Eighth Circuit Court of Appeals, in dealing with the Missouri valued policy law, held that a material misrepresentation by the applicant will void a policy written upon the basis of such misrepresentation and that although it is the insurer's burden to evaluate the property insured, it can discharge this burden only when material facts are revealed to it by the applicant. *Lumbermens Mutual Insurance Co. v. Edmister*, 412 F.2d 351 (8th Cir. 1969). The court in *Naiman v. Niagara Fire Insurance Co.*, 285 App.Div. 706, 140 N.Y.S.2d 494 (1955), said that the valuation in a valued policy is conclusive upon the parties when neither fraud nor mistake is charged; and in *Day v. Hustisford Farmers' Mutual Insurance Co.*, 192 Wis. 160, 212 N.W. 301 (1927), it was held that in the absence of misrepresentation of the value of the dwelling insured, testimony as to its actual value was properly excluded as immaterial under a valued policy fire insurance provision. This view is summarized in 45 C.J.S. *Insurance* § 916, which explains that an insurer in the case of total loss cannot avoid liability for the amount stated in the policy by showing excessive valuation unless the insurer shows accident, mistake, criminal conduct, or fraud on the part of the insured.

We are satisfied that the North Dakota Legislature did not enact § 26–18–08, NDCC to encourage, shelter, or reward fraud which would be the result if we were to give this statute the narrow construction contended by Zuraff.

From examining the trial court's memorandum opinion, the findings of fact and conclusions of law, we conclude that the trial court erroneously construed § 26–18–08, NDCC to prohibit raising the defense of fraud under the circumstances of this case. The court under this erroneous conclusion did not take into account the question of fraud nor did the court rule on the question

---

1. MSA Sec. 65.05 required property to be previously examined by the insurer, whereas Sec. 26–18–08, NDCC does not require this. The provisions of the Minnesota statute are also specifically predicated upon "absence of fraud."

of fraud and misrepresentation. Neither did the court take into account that the value of the property, in part, was based upon remodeling to be done, or that the value of the property was based on the purchase price, which could have included the business and matters other than the structure. The summary judgment is therefore in error as a matter of law.

Having concluded that fraud in the procurement of insurance is a defense under the valued policy statute, we must determine whether the allegations made in this case create a question of fact so as to make summary judgment inappropriate.

■ Summary judgment is available to allow for prompt disposition of a controversy on the merits without trial when there is no dispute as to salient facts or when only a question of law is involved, and its purpose is to promote expeditious disposition of cases. *Rude v. Letnes,* 154 N.W.2d 380 (N.D.1967). Summary judgment should be granted only if, after reviewing the evidence in the light most favorable to the party against whom summary judgment is sought, it appears that there are no genuine issues of any material fact and that the moving party is entitled to judgment as a matter of law. *Ray Farmers Union Elevator Co. v. Weyrauch,* 238 N.W.2d 47 (N.D. 1975).

■ We said in *Farmers Elevator Co. v. David,* 234 N.W.2d 26 (N.D.1975), that even though the facts may not be in dispute but the inferences reasonably deducible therefrom may be conflicting, summary judgment is inappropriate. We believe that reasoning is particularly applicable here, where for the most part, the facts alleged were not disputed but could give rise to different conclusions.

Under Rule 56(c), NDRCivP, summary judgment is to be rendered based upon pleadings, depositions, answers to interrogatories, admissions, and affidavits. Our review of the record shows the following facts and circumstances:

**2.** If, at the trial on remand, it is found overvaluation occurred with intent to defraud it would also require consideration of the question

■ Zuraff purchased fire insurance coverage for the real property involved in the amount of $60,000. He alleged that the purchase price for said property was $50,-000. However, the record does not reveal whether that price included only the building and land, or the building and its contents, or the entire business, including liquor license. Counsel for the insurance company alleged that this purchase price was inflated. Zuraff alleged by way of affidavit that substantial improvements were made to the building after its purchase, but admitted that the improvements had not been made at the time the insurance was obtained, and were only in the planning stage. It is not disputed that one month after the policy was issued the premises were totally destroyed by fire. The property was apparently not inspected by the insurer or its agents until after the fire.

The insurer alleged fraud and misrepresentation by Zuraff in obtaining insurance coverage. An affidavit of C. J. Oster, the insurer's employee who inspected the premises after the fire, alleged that Zuraff knew at the time he obtained the policy that the building was not worth $50,000, but that he planned to remodel it. Oster's affidavit also alleged that information concerning the amounts expended for remodeling by Zuraff was not furnished to him as Zuraff said it would be. Planning to remodel so as to increase value in itself is not sufficient. Here we have a question of fact relating to the amount of remodeling accomplished. Our review of the record also shows that the insurer claimed the policy was issued to Zuraff by the same real estate agent who sold Zuraff the property less than a month earlier.[2] Among other items of information contained in the insurer's affidavits are estimates of the fair market value of the insured premises and an abbreviated history of previous prices paid for the Cave Bar.

Clearly, there is a dispute based on the record before us at least as to the inferenc-

whether or not the insurance company is charged with knowledge through its agent.

es to be drawn from these facts. More specifically, the question of fact remaining for determination by the fact finder centers on the existence or absence of fraudulent intent. Ultimate determination on the issue of recovery under the real estate portion of the fire policy rests on whether or not Zuraff overvalued the property with intent to deceive and thereby gain some advantage from the insurer, and this question was not properly resolved by summary judgment.

Fraud cannot exist unless an intent to deceive is present, for it is action of the mind which gives existence to the fraud. *See, Verry v. Murphy*, 163 N.W.2d 721 (N.D.1968); *Zimmerman v. Kitzan*, 65 N.W.2d 462 (N.D.1954). The South Dakota Supreme Court observed in *Wilson v. Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968), and we agree, that actions involving state of mind are among several kinds of cases which are not usually suited for disposition on summary judgment. Fraud is basically a fact question which needs to be tried and resolved by the trier of facts which was not tried or resolved by the court in the summary judgment. If the facts are to be construed favorably to the party resisting the summary judgment, here the insurer, the inference could be made that Zuraff intended to deceive the insurer as to the value of the Cave Bar, and we must allow that issue to be resolved by giving the insurer its day in court.

We are cognizant of the fact that the circumstances constituting fraud must be stated with particularity under Rule 9(b), NDRCivP, in order that the opposing party be put on sufficient notice as to what acts are being relied upon for assertion of the fraud defense. We do not hesitate to state that a mere allegation of overvalued property would not have been sufficient to overcome a motion for summary judgment. If it were, the purpose of the valued policy statute would be defeated. But we think the circumstances here alleged sufficiently apprise Zuraff of the facts being relied upon in support of the fraud defense; spe-

cifically, that Zuraff grossly overvalued the premises while knowing at the time they were worth far less, that he planned on remodeling but had not yet made those improvements at the time he requested insurance coverage, and that the agent who sold him the policy also sold him the Cave Bar with the result that the fire bestowed a windfall on both Zuraff and the vendor of approximately $45,000. We also find it significant that lack of further specific allegations by the insurer may be due in part to the fact that the critical information (*i. e.*, Zuraff's intent) is in possession of the opposing party.

The law of fraud in North Dakota lends additional support to our conclusion that this issue is one for the fact finder. "Actual fraud" is defined in § 9–03–08, NDCC, as follows:

"Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with the connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive."

It is then stated in § 9–03–10, NDCC, that "Actual fraud is always a question of fact."

We stated again in *Buehner v. Hoeven*, 228 N.W.2d 893 (N.D.1975), that actual fraud is a fact question to be determined by the trier of fact. It remains to be seen whether the insurer at trial can produce the clear and convincing evidence required to prove fraud, but under the circumstances

alleged here it must be given the opportunity to do so.

■ It should be noted again that under the statute the only defense to payment of the face value of the policy is fraud, and in the absence of fraud any evidence as to actual value of the property is immaterial. It should be clear, then, that any evidence the insurer attempts to introduce at trial relative to past sale prices of the Cave Bar or opinions of its present market value are relevant *only* insofar as they can be used to establish fraudulent intent. The key issue is not whether the property was overinsured but whether Zuraff overvalued it in order to defraud the insurance company. If he did not, evidence of its actual value is of no consequence.

A question was raised about the time frame within which the fire occurred and whether it was significant that no inspection or valuation of the premises took place before the fire. The valued policy statute (§ 26–18–08, NDCC) set out previously in this opinion does not include an inspection requirement, as distinguished from some other States which make inspection a prerequisite to issuance of a fire policy. A study of the following statute, § 26–18–09, NDCC, which concerns rating bureaus, does not appear to answer the question of when, if at all, appraisal or inspection is required. In certain circumstances this might be important. For example, if an insurance company issued a fire policy without inspection (as was done in the instant case) but allowed the policy to continue in effect for perhaps a year or more, and even renewed the policy, the doctrine of estoppel could become operative. If during that length of time no inspection took place, the company could be estopped from raising facts in support of a fraud defense which could have been easily discoverable by investigation of the premises. In this case, however, the one-month interval between the effective date of the policy and occurrence of the fire may not be significant so as to put into operation the doctrine of estoppel. Any period of time would have to take into account all of the surrounding circumstances to determine whether or not the doctrine of estoppel applies.

We conclude that under the totality of circumstances stated herein the North Dakota valued policy statute does not prohibit raising as a defense fraud in the procurement of the insurance policy and that a question of fact remains here as to whether the premises were overvalued for the purpose of defrauding the insurance company. Because the trial court under these circumstances did not allow the defense of fraud to be raised and because this fact issue remains, summary judgment was improperly rendered by the trial court and we therefore reverse and remand the case for trial on the merits. No costs are to be assessed to either party.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Justice, dissenting.

I dissent. The judgment below is correct, and should be affirmed.

The dispute in this case is over the interpretation of Section 26–18–08, N.D.C.C. It provides that the stated amount of the insurance written in a fire-insurance policy shall be taken conclusively to be the true value of the property insured when the insured property "shall be destroyed by fire without fraud on the part of the insured or his assigns, . . ."

As I read this statute and the relevant case law, only fraud subsequent to the issuance of the policy can be a defense.

I do not read the North Dakota cases, *Horswill v. North Dakota Mutual Fire Insurance Co.*, 45 N.D. 600, 178 N.W. 798 (1920), and *Jakober v. Commercial Union Assurance Co.*, 49 N.D. 270, 191 N.W. 480 (1922), as having decided that fraud in the obtaining of the policy is a defense. While there is language in both cases to support the majority view, I believe it is dictum under the facts of both cases. In *Jakober*, 191 N.W. at 481, Judge Christianson, in a concurring opinion, points this out. He says:

"Whether section 6624, *supra* [now § 26–18–08, N.D.C.C.], precludes the insurer from asserting as a defense that he was induced to overvalue the property in the policy as a result of fraudulent representations on the part of the insured need not be determined in this case."

In the *Jakober* case the jury was given the issue of whether the plaintiff signed the application with the intent to misrepresent the facts or deceive the defendant, and the jury found that he did not, but since the jury also found that the value of the property at the time of the loss was equal to the amount of insurance, the question of whether the application was false or not was really immaterial. The decision is puzzling, but I think the holding is really found in syllabus by the court ¶ 2, 191 N.W. at 480, which reads:

"There was no fraud in the destruction of the property. The loss was total. In these circumstances, under the provisions of section 6624, Comp.Laws 1913, plaintiff was entitled to recover the amount of insurance written in the policy, or $800."

If this is the true basis of the holding, then the case really supports my dissent and not the majority opinion.

In the *Horswill* case the court said [178 N.W. at 800] that the value of the property is determined

". . . by the amount written in the policy, and, except for fraud, that amount is conclusive. The defendant could have ascertained the value before issuing its policy. If it did not do so, it should have. As it has failed to do so, and there is no fraud, it is bound by the amount for which the buildings are insured. It is not claimed in this case there is any fraud, and the record discloses none. The plaintiff did introduce competent testimony showing the value of the dwelling to be $3,800, but this was entirely unnecessary, and, in this case, entirely superfluous."

I take this language to mean that the insurer is bound to ascertain the value of the property before issuing the insurance policy and, if it fails to do so, it is bound by the face amount stated in the policy. The

reference to fraud, I believe, must refer to fraud in causing the loss or, perhaps, fraudulent acts after the issuance of the insurance policy which increased the risk. This seems to be the holding of *Nathan v. Saint Paul Mutual Insurance Co.*, 243 Minn. 430, 68 N.W.2d 385, 390 (1955), in which the Minnesota Supreme Court concluded:

". . . that the nature, use, and condition of a structure which reasonably are discoverable by an inspection at the time the fire insurance policy is issued or renewed cannot be shown by the insurer as proof that, relative to those matters, the insured committed intentional fraud or misrepresentations increasing the risk of loss. And failure to inspect shall not put the insurer in any better position than if an inspection had been made. To adopt the views of defendant would be to nullify the statutory duty of inspection and render the statute wholly ineffective."

Minnesota, as the *Nathan* case points out, has a statute requiring that the insurance company cause the structure to be previously examined and its insurable value to be fixed and the amount thereof stated in the policy. North Dakota's provision as to inspection is somewhat different. The North Dakota statutes, Sections 26–18–09 to 26–18–11, inclusive, apply to rating bureaus engaged in making rates or estimates for rates in this State and provide for review and hearings on complaints about ratings. They do not in specific terms require each risk to be rated. However, I believe that the language of Section 26–18–08, *supra*, read together with *Horswill, supra*, requires the insurance company to either make an inspection and determine the value of the property insured or else take the risk that it is overvalued.

If we were to reach the facts in this case, the insured would still be entitled to recover. The insurance company knew the actual value of the insured property at the time the policy was issued. It knew it because its agent knew it. Its agent who took the application was also the real estate agent who sold the property to the plaintiff. His knowledge is the company's knowledge.

He is an agent for the company. Sec. 26–07–02, N.D.C.C.; *National Farmers Union Property & Casualty Co. v. Michaelson*, 110 N.W.2d 431 (N.D.1961). Under Section 26–02–16, N.D.C.C., neither party to a contract of insurance is bound to communicate information which the other knows or ought to know. The insured could hardly commit fraud by failing to tell the company what the company, through its agent, already knew.

The authorities cited in Justice Sand's opinion are unpersuasive. The quotation from 15 Couch on Insurance is supported by only two cases, with one cited *contra*. In *Naiman v. Niagara Fire Insurance Co.*, 285 App.Div. 706, 140 N.Y.S.2d 494 (1955), the court specifically found that the policy in question was not a valued policy. *Lumbermens Mutual Insurance Co. v. Edmister*, 412 F.2d 351 (8th Cir. 1969), was decided on the basis that the sale of property by the insured after the policy was issued deprived him of an insurable interest. Thus this was a case where subsequent events deprived the insured of a right to collect on the policy. *Day v. Hustisford Farmers' Mutual Insurance Co.*, 192 Wis. 160, 212 N.W. 301 (1927), supports the statement made in Justice Sand's opinion, but it cites no authority, and the statement is only dictum.

I would prefer to follow the rule of the *Nathan* case, discussed above, and *Gamel v. Continental Insurance Co.*, 463 S.W.2d 590 (Mo.App.1971). That rule is that the insurance company is bound by the valuation stated in a valued policy, and the only fraud which will excuse it from paying the amount stated in the policy is fraud subsequent to the issuance of the policy or relating to the destruction of the property. I believe this is the rule in North Dakota [see syllabus by the court in *Jakober v. Commercial Union Assurance Co., supra*]. It is also the rule which accomplishes the dual purpose of statutes such as Section 26–18–08, N.D.C.C. As stated in the majority opinion, that dual purpose is (1) to relieve the insured from the burden of proving the value of his property after its total destruction, and (2) to prevent overinsurance by discouraging insurance companies from collecting premiums on overvalued property, but then contesting value, and hence liability, when it becomes to their advantage to do so.

The majority seems to feel that it is wrong for the insured here to get a windfall by collecting more than the destroyed property may have been worth. I feel it is wrong to permit insurance companies to collect thousands of smaller windfalls each year in the form of inflated premiums based on over-valuations of property, so long as there is no loss, and then assert fraud on the part of the insured, in the hope of paying less than the agreed value, when a loss occurs. Both kinds of windfall could be avoided by requiring insurance companies to inspect and appraise properties when they insure them. The majority opinion lets the companies have the best of both worlds, and lets the insured get the worst of it either way—too much premium, too little settlement in case of loss.

I would affirm the judgment of the trial court. It was correct. Summary judgment was properly granted where the only fraud alleged was prior to the issuance of the policy, since the only fraud which can properly be asserted as a defense is fraud occurring after the issuance of the policy.